# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LIZA NORTON, *Individually*
*and on behalf of all Others similarly*
*situated,*
     Plaintiff,

                            Case No:
                            216(b) Collective Action

v.

CAREBRIDGE MEDICAL GROUP
PC INC., RSV QOZB LTSS, INC., AND
ELEVANCE HEALTH INC., d/b/a
CAREBRIDGE HEALTH,
     Defendants.

---

## COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE OVERTIME WAGE SECTION OF THE FAIR LABOR STANDARDS ACT (FLSA) FAILURE TO PAY OVERTIME WAGES

Plaintiff, LIZA NORTON, individually and on behalf of all other similarly situated persons employed as an inside sales representatives (ISR) at any time during during the period of 3 years preceding the filing of this complaint sues Defendants, **CAREBRIDGE MEDICAL GROUP PC INC., RSV QOZB LTSS, INC., AND ELEVANCE HEALTH INC**. D/B/A CAREBRIDGE HEALTH (all Defendants hereinafter collectively referred to "Carebridge", or Defendants), pursuant to 29 U.S.C. § 216(b), of the Fair Labor Standards Act (the "FLSA") for failure to pay overtime wages

for all hours worked over 40 in each and every workweek.

**RECITATION OF FACTS**

1.      Pursuant to a national, common policy and unlawful pay practice and scheme to avoid it overtime pay obligations under the FLSA, Carebridge both pressured and permitted a group of workers under the title of "Clinical Assessor" or LTSS Clinical Accessor, LTSS Clinical Specialist or variations of these titles to suffer to work overtime hours without pay by either willfully misclassifying these positions as exempt, or just willfully violated the FLSA and refused to pay overtime premiums to these non-exempt employees in order to save millions of dollars in labor costs and increase profits.

2.      Putting it succinctly, Defendants willfully engaged in conduct which was deceptive and misleading, including presenting purposefully misleading and vague communications and statements intended to confuse these employees over their classification and exemption status under the FLSA, and to dissuade or deter these employees claiming or complaining about working overtime hours with any premiums for such hours worked.

3.      Plaintiff Norton, and other similarly situated Clinical Assessor employees were unlawfully not compensated for all hours worked over 40 in each and every work week, and were permitted to suffer to work off the

clock in violation of the FLSA.

4.      Defendant Carebridge Medical Group PC INC. and Defendant RSV QOZB LTSS, INC., upon information and belief, did business under the name or tradename Carebridge and/or Carebridge Health and for all purposes were an integrated business enterprise.  For purposes of this action, Plaintiff refers to these 2 corporation defendants as the "Careridge entities", who along with their recent purchaser in 2024 and now parent corporation, Defendant, Elevance Health Inc. (ELV) collectively in this action as are referred to as "defendants" or Carebridge.

5.      The Carebridge entities, and its new owners, Elevance Health Inc. (ELV) have improperly and willfully withheld and refused to pay Plaintiff and all Clinical Accessors overtime wages and a premium for overtime hours worked and at the correct lawful rates;  Defendants willfully misclassified the Clinical Accessor position as exempt from overtime pay.

6.      At the very least, Defendants acted with reckless disregard for their obligations under the FLSA to pay Clinical Accessors overtime premiums for all hours worked over 40 in each and every workweek.

7.      Plaintiff and similarly situated Clinical Accessors do not qualify for the administrative exemption because they were not allowed to hire, fire, mentor, or discipline any employees, and their primary job duty did not

involve the exercise and discretion of independent judgment in matters of significance; alternatively they were involved in "production": processing assessment forms to be delivered to its insurance company clients.

8.    Under the FLSA, an administrative employee is defined as an employee who has "discretion and independent judgment with respect to matters of significance." 29 C.F.R.§541.200. In order to possess such discretion the employee must have the authority to make "independent choice[s], free from immediate direction or supervision…even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. §541.202(c).

9.    The Clinical Accessors' primary duties involved routines and adherence to policies and procedures from manuals and guides; and they were mandated and instructed and pressured to come up with reports to justify cuts in home health aide hours such as by 13% regardless of whether the Clinical Accessor believed any hours were reasonable to cut or were harmful to the patients involved. They were stripped from the ability to use their independent discretion and judgment as licensed therapists in performing their work for Defendants.

10.    Clinical accessors, like obedient soldiers, carried out the management's orders under warnings and threats of written disciplinary

action, including termination of employment if they failed to publish or issue assessments/reports calling for the mandated cut %.

11.    While everyone, including a grocery bagger has some level of discretion on how to carry out their day to day job duties, people are not robots and Plaintiff and all Clinical Accessors had some limited ability to justify in these reports/assessments the reasons for recommending the curing of the home health care hours.

12.    In essence, Defendants pressured Plaintiff and all other clinical accessors to abandon their duties and obligations as licensed clinical therapists and therapy assistants in favor of pumping out report or assessment one after the other which its insurance company clients, like United Health Care, could use to cut the money it would pay out for medicare based, home health aides and the amount of care it had to pay for for its policyholders.

13.    In other words, the job duties and responsibilities, or requirements of the job of a Clinical Accessor were standardized for all Clinical Accessors.

14.    Defendants willfully failed to comply with the record keeping requirements of the FLSA and DOL regulations for the FLSA found at 29 CFR Part 516.

15.     The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all right to plead in the alternative.

## Jurisdiction & Venue

*16.*     This Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. §1331*, because this action involves a federal question pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216 (b)*.

17.     This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

18.     This Court has personal jurisdiction over the Defendants, because the Defendants operate substantial and continuous business in this District, employing numerous employees working from their homes here, and because  the damages at issue occurred within this District.  Thus under Florida's Long Arm Statute F.S. 48.193, each Defendant is subject to personal jurisdiction in this action.

19.     Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, and Defendant routinely does business within this

district.

20.    The overtime wage provisions set forth in FLSA §207 apply to Defendants, as it engages in interstate commerce under the definition of the FLSA.  At all relevant times, Defendants engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203 as a common business enterprise.  Additionally, Defendants each earned more than $500,000 in revenue during each year from 2021 to 2024 and employed hundreds to one thousand and more employees during this time.

## The Parties

### Representative Plaintiff, LIZA NORTON

21.    Liza Norton resides in Lakeland, Florida.  She was hired to work for "Carebridge Health" on January 30, 2023 under the title and in the position of "LTSS Clinical Accessor", (hereinafter Clinical Accessor) and continued in this position until her separation from employment on or about July 24, 2023.

22.    Plaintiff's paychecks show she was paid by Defendant CAREBRIDGE MEDICAL GROUP PC INC., but in all company records, papers, and communications, Defendant and plaintiff solely referenced

Defendant to as "Carebridge" or Carebridge Health, secretly concealing the full corporation name whom Plaintiff was employed by.

23.    The Carebridge employee manual provided to Plaintiff likewise indicates Plaintiff was employed by "Carebridge" and "Carebridge Health" who is referred to as Plaintiff's employer.

24.    Plaintiff was hired in a wave of approximately 40 other persons in this position, all of whom worked remotely from their homes in differing states in the USA.

25.    The job training Plaintiff received after being hired demonstrated a commanded uniformity Defendant expected in the performance of the job duties and responsibilities by the new recruits:  you complete these form assessments in one single method and they must come out to justify the cuts in home health aide time we demand upon you.  In other words, do them our company way and abandon your discretion and opinions, or it's the highway for you, meaning say good bye to your job.

26.    At all times material, Plaintiff worked as a Clinical Accessor from her home in Lakeland, Florida.

27.    Plaintiff's work was highly supervised, micro-managed, and scrutinized on a daily and weekly basis by a manager.

28.    Plaintiff last worked for Defendants on or about July 27, 2023

when she was terminated after complaining about numerous actions of Defendant, including the willful refusal to pay her overtime premiums for hours worked for all the past hours worked over 40 in any workweek.

29.    When hired, Plaintiff was led to believe the position was a 40 hour per week job, and that she was being paid on a "salary basis", although she was never informed of any exemption under the FLSA Defendants were claiming applied to her role nor did they ever dare put in writing that she was exempt from overtime pay.

30.    Meanwhile, Defendants in direct conflict with the idea and point of being a salaried exempt employee, pressured Clinical Accessors not to report overtime hours worked.

31.    Defendants both encouraged and pressured Clinical accessors to work as many hours as necessary to keep up with job duties and responsibilities.

32.    Defendants led Plaintiff to believe that she was properly classified as exempt from overtime pay and thus not legally entitled to such overtime pay, going so far as actually telling Plaintiff that no matter how many overtime hours she worked, she would not be paid a premium for these hours.

33.    Plaintiff, like all Clinical Accessors, were assigned to work for

a client insurance company's files, and upwards of 30 to 50 assigned as a workload.

34.    Plaintiff's primary job duty was to fill in information on the assessment form and report to justify the cutting of the amount of hours needed for home health aide time and care in order to make the insurance company more money.

35.    Plaintiff, like other clinical accessors, were given a set weekly corporate schedule of 45 hours per week, 9-hour days with opportunity to take up to a 1 hour meal break; Plaintiff's standardized work schedule was 8 am to 5pm.

36.    Plaintiff routinely worked through much of this 1 hour meal break, including working while eating at her desk, or taking a short break of under 15 minutes to prepare a meal and to eat and then continued with work.

37.    At no time did Defendants explain that working through this 1 hour provided meal break was compensable overtime work hours and which could be claimed and paid.

38.    The plaintiff found it necessary to stay after the ending shift time and put in additional work hours to complete her job duties, attend appointments and make phone calls; she routinely worked greater than 45 hours per week throughout the term of her employment.

39.    Plaintiff similarly performed work on weekends using her laptop, and answering emails, and such work was not foreclosed, prohibited or discouraged, and moreover, management knew Clinical Accessors were accessing programs and performing work outside the office.

***Defendants***

40.    *Defendant CAREBRIDGE MEDICAL GROUP PC INC. (CMGPI)* is a wholly owned subsidiary of ELEVANCE HEALTH INC., a publicly traded (ELV) foreign (UK) international corporation and upon information and belief, also a wholly owned subsidiary of co-defendant, RSV QOZB LTSS, INC., but at minimum is affiliated and related.  It's principal place of business is located at 926 Main Street, Nashville, Tennessee, 37206.  It may be served through its designated Florida registered agent, Cogency Global Inc., at 115 North Calhoun Street, suite #4, Tallahassee, FL 32301.

41.    Defendant RSV QOZB LTSS, INC. (RQLI) is a foreign, for profit corporation, with principal place of business at the same office of Defendant Carebridge, located at 926 Main Street, Nashville, Tennessee, 37206.  It may be through its Florida designated registered agent Cogency Global Inc., at 115 North Calhoun Street, suite #4, Tallahassee, FL 32301.

According to the official records of the secretary of state for Tennessee, "Carebridge" is a business and name operated by this Defendant, and thus may be just a trade name or fictitious business name, and upon information and belief is related and affiliated with co-defendant CMGPI, and now jointly owned by Elevance.

42.    Defendant Elevance Health Inc. is a foreign, international corporation, and publicly traded company (stock symbol ELV and herein ELV) who currently owns co-defendants, Carebridge Medical and RSV QOZB LTSS, INC. since about November or December 2024.  ELV's principal place of business and corporate headquarters in the U.S. located at 220 Virginia Avenue, Indianapolis, Indiana 46204. Defendants may be served through its Florida designated registered agent CT corporation System at 1200 S. Pine Island Road, Plantation, Fl 33324.

43.    Pursuant To A Elevance Health Inc. 10-Q Quarterly report, Elevance Health was buying Defendant Carebridge Medical and RSV QOZB LTSS, INC. who appears to operate and does business as "Carebridge" or "Carebridge Health": and who is believed to now wholly own defendants, Carbridge Medical Group PC Inc. and RSV QOZB LTSS,

INC.[1]

44.    As stated by Defendant Elevant Health's 10k 2023 annual report, Elevance (ELV) claims to be: "We are one of the largest health insurers in the United States in terms of medical membership, serving approximately 47 million medical members through our affiliated health plans as of December 31, 2023.".

45.    Upon information and belief, at peak times within the preceding 3 years of the filing of this complaint, Defendant employed 200 or more Clinical Accessors working at or reporting remotely to its corporate office located at 926 Main Street, Nashville, Tennessee.

46.    Given turnover, Plaintiff estimates that the putative class of similarly situated inside sales representatives to be in the range of 400 persons who worked as Clinical Accessors within the preceding 3 years from the filing of this complaint.

47.    Carebridge and Elevance are both Plaintiff's Plaintiff's employers within the meaning of 29 U.S.C. § 203(d), and joint employers under the law.

---

[1] On October 15, 2024, we entered into an agreement to acquire RSV QOZB LTSS, Inc. and certain affiliated entities (d/b/a CareBridge), a value-based healthcare company that manages home and community-based services for Medicaid and dual-eligible populations receiving long-term services and support. This acquisition aligns with Carelon Service's care at home strategy, and our vision to be an innovative, valuable and inclusive healthcare partner by providing care management programs that improve the lives of the people we serve. The acquisition is expected to close in the fourth quarter of 2024 or first quarter of 2025 and is subject to standard closing conditions and customary approvals.

48.    Defendant Elevance is an integrated business enterprise and now owner of the Defendant Carebridge entities; RSV QOZB LTSS, INC. and Carbridge Medical Group PC Inc.

49.    Elevance, since the purchase of the Carebridge entities is the joint employer of all those similarly situated under as defined in the FLSA, and is subject to successor liability for claims of all former and present employees of the Carebridge entities.

50.    At all times within the preceding 3 years, Clinical Accessors were jointly employed by Carebridge Medical Group PC Inc. and RSV QOZB LTSS, INC., meaning they were the joint employers of Norton and all others similarly situated who performed work for the benefit of both Defendants.

51.    Defendants Carebridge Medical Group PC Inc. and RSV QOZB LTSS, INC. operated as an integrated business enterprise, with shared officers, offices, company policies and procedures and jointly did business under the name(s) Carebridge and Carebridge Health.

52.    Norton and the similarly situated Clinical Accessors followed and were governed by Carebridge Health company policies and procedures, and thus both Carebridge entities directed their work, regardless of whether they in fact were paid by Carebridge Medical Group PC INC., (RQLI) or

some other yet unknown wholly owned subsidiary or affiliated company.

**THE LEGAL CLAIMS FOR UNPAID OVERTIME HOURS WORKED AND DEFENDANTS' UNLAWFUL PAY PRACTICES**

53.     This FLSA Section 216b "collective action" lawsuit arises from an ongoing wrongful scheme by Defendants to willfully refuse to pay overtime wages to a large class of non-exempt workers and employees, the LTSS Clinical Assessors, who Defendants knows routinely suffered to work overtime hours without being paid for all these hours in order to meet performance metrics or production requirements.

54.     Alternatively, Defendants willfully misclassified all Clinical Accessors over the preceding 3 years, through the present as salaried, exempt employees, including continuing to classify this position as salaried exempt under the newly assigned job title of "Clinical Specialist", or "LTSS Clinical Specialist".

55.     Defendants' unlawful pay practices applicable or either willfully misclassifying clinical accessors as exempt or just willfully refusing to pay overtime premiums and operating a De Facto Rule along with failing to record the work hours of non-exempt employees was designed to save the Defendants many millions of dollars in labor costs and increase profits at the expense of and to the financial detriment its workers.

In other words, Defendants willfully stole from the Clinical Accessors wages it knew or should have known were owed to them.

56.    The FLSA does not require non-exempt employees to have to "claim" or submit a claim for overtime hours as a condition for being paid for these hours, especially where the Defendants knew, know or should have known, that such employees are working overtime hours.

57.    Here, Defendants have maintained a pressure campaign, combined with misinformation, misclassification, intimidation and the actions of willfully choosing to not institute any time tracking system to dissuade clinical accessors from claiming or seeking pay for their overtime hours.

58.    Further, the Defendants discouraged Clinical Accessors from claiming overtime pursuant to a De Facto policy which included telling them that they are not entitled to overtime pay while warning them against self-reporting any overtime hours to the company for pay.

59.    Plaintiff, like all other clinical accessors/specialists may have been actually classified by Defendants as "salaried non-exempt employees" who were misled to believe they were not entitled to be paid a premium for any overtime hours worked by misinformation and misrepresentation by Defendants.

60.    Regardless, all clinical accessors were paid pursuant to the same common pay plan:  a base salary stated in an annual sum and told they were not entitled to overtime pay.

61.    Upon information and belief, Norton, and most clinical accessors were never informed in writing whether they were classified as "exempt " or "non-exempt employees under the FLSA.

**THE COLLECTIVE OF SIMILARLY SITUATED:  A CLASS OF LTSS CLINICAL ACCESSORS**

62.    Plaintiff brings this suit individually, and on behalf of all similarly situated persons composed of the following Class members:

**All employees working as LTSS Clinical Accessors, Clinical Accessors, LTSS Clinical Specialists or Clinical Specialists, or any other job title used to describe these same positions and who are currently employed or were previously employed by Carebridge Medical Group PC Inc., RSV QOZB LTSS, INC. doing business as Carebridge Health, or who are now employed by ELEVAN HEALTH INC. or its wholly owned subsidiaries,  anywhere within the U.S. within the past three years preceding the filing of this lawsuit to the date of the closure of any authorized Notice Period in this action.**

**GENERAL FACTUAL COLLECTIVE ACTION ALLEGATIONS**

63.    Plaintiff is similarly situated to all these proposed Clinical Accessors as she was employed by Defendants under the titles of LTSS Clinical Accessor for Carebridge Health during the term of her employment and because:  a) routinely worked more than 40 hours during the work

weeks in order to complete her job duties and responsibilities, and b) she was paid under the same common pay structure/plan applicable to all other clinical accessors:  a base salary and told she was not entitled or eligible for overtime pay for hours worked over 40 in any workweek, and c) is familiar with Defendants' policies, procedures,  and unlawful pay practices.

64.    Despite Defendants later changing the job title of the Clinical Accessor to include the word "specialist", Clinical Accessors were stripped of their discretion in the conclusion and the assessment, and the reports/assessments had better show the mandated cuts or the employees would need to find another job.

65.    Upon information and belief, all Clinical Accessors were compensated on a salary basis, and were not asked nor required to report or clock in and out for their work time and report their actual work hours.

66.    While Defendants never expressly or explicitly put in writing whether Plaintiff and clinical accessors were classified by Defendants as "exempt" from overtime pay under the FLSA, they verbally made it clear to Plaintiff and other Clinical Assessors that they were not going to pay for any overtime hours worked and stated they were paid on a salary basis.

67.    During this relevant  3 year claim period, Defendants treated Plaintiff and  all  other  Clinical  Accessors as  salaried  employees  wherein

defendants did not comply with record keeping requirements of the FLSA and CRF and did not pay them overtime premiums for hours they knew were being worked over 40 in any workweek.

68.    Norton's primary job duty in her positions was to conduct phone-based health assessments, known internally as CareBridge Functional & Environmental Recommendations (CFER), which are ultimately used by Defendant's health insurance company to justify reductions in caregiver hours for vulnerable populations.

69.    In these assessment forms, Clinical Assessors had to fill in information to justify curing the hours for home health aides to a mandatory and set %, such as 8% or 13%, and to complete a set number, such as 4 each work day.

70.    Upon information and belief, the clinical accessors across the US all were paid pursuant to a common pay plan of a base salary and informed that they were either not entitled to or eligible for overtime pay.

71.    All Clinical Accessors were subject to the same job requirements, and all were performing their job duties in similar manners pursuant to standardized company policies and procedures and training.

72.    Upon information and belief, Defendants used misinformation and misleading communications to lead clinical accessors to believe they

were either salaried exempt employees or just not legally entitled to be paid for overtime hours by proclaiming as a policy: "we don't pay overtime".

73.    Defendants failed to advise Plaintiff and all clinical accessors that as per the FLSA, a meal break which is not at least 30 minutes of "**uninterrupted, non-work activity break**" is to be counted as work hours and to be reported and paid, compensable time, even if doing so put the employee into overtime hours.

74.    Defendants pressured clinical accessors to work as many hours as needed to hit production goals or quotas, aka performance metrics such as completing 4 assessments per day, and pressured them to do so under fear of termination of employment, while simultaneously discouraging the reporting of overtime hours or seeking to make a claim for overtime pay.

75.    All clinical accessors were purposefully misled by Defendants to believe they were not legally entitled to overtime pay as exempt employees and/or salaried employees, and Defendants willfully chose not to institute any time tracking system to report work hours and meal break times.

76.    Defendants absolutely knew that clinical accessors routinely worked overtime hours, as managers and supervisors witnessed the extra hours, and knew and could monitor and see them accessing databases, and

computer systems, outside and beyond their assigned work schedules, and may have as well communicated with them directly outside their work schedules discussing work matters.

77.    This is in addition to hearing complaints from clinical assessors about the high amount of work hours necessary to complete their job duties and beyond the standard corporate work schedule assigned.

78.    Defendants pressured Clinical Accessors to work more hours by warning of termination if they did not complete the assigned number of assessments each day.

79.    Further, Defendants willfully discouraged clinical assessors from reporting overtime hours by both misleading them into believing that it was a lawful pay practice to say simply we don't pay overtime or you are not entitled to it, and by warning of disciplinary action if the Clinical accessors sought to formally report and claim overtime hours worked.

80.    Meanwhile, Defendants knowingly permitted Norton and all other clinical accessors to commence work prior to their daily shift start times, to take less than 1 full hour meal breaks, and to continue to work after the ending shift times and on weekends, all with a "blind-eye" to it.

81.    Alternatively, Upon information and belief, Defendants classified Clinical Accessors as Salaried, non-exempt employees, rather than

salaried exempt employees, the stats and the fact which was willfully concealed from Plaintiff and other clinical accessors..

82.    Defendants have willfully failed to pay Plaintiff and all similarly situated clinical accessor employees in accordance with the Fair Labor Standards Act (FLSA).  Specifically, Plaintiff and similarly situated employees were not paid time and a half of their regular rate pay for all hours worked in excess of forty (40) hours per week, nor paid any premium for the overtime hours worked.

83.    Plaintiff Norton and the similarly situated employees did not and currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendants' pay practices are not only clearly unlawful, but are UNFAIR as well.

84.    Plaintiff, like all clinical accessors, were assigned a corporate, standardized weekly work schedule of 9 hour work days such as from 8:00 am to 5:00 pm Monday through Friday which was a 45 hour workweek.

85.    Defendants automatically deducted 1 hour from each work day for meal breaks, whether the employee took a non-working break of just 15 or 30 minutes or 1 hour which was allotted for the clinical accessors and without regard to whether these employees took some, part or none of this time for non-working, uninterrupted meal break time.

86.     Thus,  Plaintiff Norton routinely worked more than 40 hours each week during the term of her employment just by adhering to the corporate work schedule of 8 am to 5pm because she frequently took less than the 1 hour meal break permitted.  No company policy or procedure permitted Plaintiff to report or claim this time and be paid for it.

87.     The Defendants maintained a company-wide policy throughout the relevant 3 year class period of willfully refusing to pay overtime wages or any premium pay for overtime hours worked for inside sales representatives despite, clear knowledge inside sales representatives have worked and continuing to work overtime hours, and as classified under the FLSA, non-exempt employees automatically due such wages.

88.     Clinical Accessors had production requirements or performance metrics which included the requirement to complete four full assessments daily, each involving lengthy and detailed processes that cannot reasonably be completed in the typical 8 hours of allotted work time in each day.

89.     To meet these production requirements, clinical accessors are forced to work more than 8 hours in a day, and work hours even on weekends, evenings and during the 1 hour meal breaks, the time of which is not tracked or recorded.

90.     Meanwhile, Defendants warned clinical accessors against

claiming or asking for overtime pay for the overtime hours it both knows and expects will be incurred by clinical accessors in keeping up with the work assigned and the production or performance metrics and requirements.

91.    Management threatens clinical accessors with disciplinary action and financial harm if they do not meet these production standards or performance metrics, including threats of reducing their pay, and termination of employment for failing to meet these metrics.

92.    Defendants maintained a ***De Facto*** off the clock policy (although there technically was not a time clock system), in which inside clinical accessors were intentionally misled about their exemption status and entitlement to overtime pay, and put in fear of submitting work hours and for overtime wages.

93.    At no time during the relevant 3 year time period did Defendants formally discipline clinical accessors for working hours beyond the standard assigned shift, and not only knew clinical accessors did so and logged into computer databases on weekends and evenings, but turned the proverbial blind eye to all this overtime work.

94.    All clinical accessors across the U.S. followed standardized company policies and procedures applicable to all, including uniform, standardized and common job requirements for working as clinical accessors

95.    All clinical assessors had similar, standardized job requirements.

96.    All Clinical Accessors performed routine day to day job functions whose primary job duty was completing Defnant's proprietary assessment forms and reports.

97.    These primary job duties include conducting phone-based health assessments, known internally as CareBridge Functional & Environmental Recommendations (CFER), which are ultimately used to justify reductions in caregiver hours for vulnerable populations.    These CFER are also referred to by the company as OT/PT assessments.

98.    The position of clinical accessor suffered from a high turnover rate, with employees leaving for reasons which include frustration over required overtime hours and the lack of pay.

99.    Plaintiff, as well as the members of the putative class of similarly situated employees, routinely worked through part or all of their lunch breaks, and also performed other work incidental to their job at home.

100.    Many required and requisite interviews and phone calls necessary to complete the CFERR had taken place in the evening hours to accommodate patients and family members who could not be reached during regular business hours.

101.    Pursuant to FLSA §207, Defendants, as the joint employers of Plaintiff and the similarly situated employees, were in the past and are currently required to pay an overtime premium for all hours worked in excess of forty (40) hours per week for non-exempt employees, or including hourly paid employees.

102.    Defendants clearly knew or should have known, that these clinical accessors do not satisfy any exemption, specifically: they fail the administrative exemption as their primary job duty is akin to production, and does not involve the exercise of discretion and independent judgment in matters of significance affecting the company; and the work stripped them of using their independent discretion and judgment and performing the actual work of licensed clinical therapists.

103.    Defendants' representations and communications to employees about the company's obligations under the FLSA and the employees' rights to overtime pay were false and intentionally misleading, as well as unlawful and unfair, as was the entire De Facto overtime policy and failure to track and record on a timekeeping system the employees accurate and actual work hours.

104.    All clinical accessors were trained to perform their job duties and expected to perform their job duties in similar manners throughout their

multiple offices, aside from the variances for the separate product lines.

105.    Evidence reflecting or demonstrating the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

106.    However, and to the extent ESI records are unavailable, Plaintiff, and members of the Class, may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)*.

## COUNT I
### VIOLATIONS OF FLSA §207 FOR FAILURE TO PAY OVERTIME PREMIUMS, AND ACTION FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

107.    Plaintiff alleges and incorporates by reference all preceding paragraphs of this Complaint and fully restates and re-allege all facts and claims herein.

108.    Plaintiff, and all other similarly situated employees are currently now or have previously been covered under FLSA §207 as employees.

109.    Defendants have willfully and intentionally engaged in a

common company pattern and practice of violating the provisions of the FLSA by failing to compensate all persons working as clinical accessors under the various job titles identified in this complaint as required pursuant to the FLSA overtime wage provisions during one or more weeks.

110.   Plaintiff and collective group of similarly situated current and former persons (often referred to as the class)  who worked for Defendants as Clinical Assessors were denied overtime compensation or premiums for hours worked over 40 in each and every workweeks mandated to be paid pursuant to FLSA §207 by Defendants because defendant wilfully misclassified them as Exempt under the FLSA under the only conceivable and possible or arguable exemption, the "Administrative Exemption".

111.   Alternatively, Defendants classified all Plaintiffs as salaried, non-exempt, but misinformed them, misled them of their non-exempt status and entitlement to overtime premiums, and then willfully refused to pay overtime premiums for hours worked over 40 it knew and should have known were occurring.

112.   Plaintiff and all those similarly situated are employees of Defendants during their time as contemplated by 29 U.S.C. § 203.

113.   Defendants do not, and cannot have a good faith basis for failing to pay Plaintiff and the class of Clinical Accessors overtime pay,

particularly here when they knew inside sales representatives were working overtime, and discouraged and placed the obligation upon the inside sales reps to formally make a claim for overtime pay.

114.    Further, Defendants were aware and clearly knew Plaintiff's work and the position of clinical accessor itself involved non-exempt job duties and was subject to the time tracking requirements of the FLSA which mandated that Defendants automatically pay any non-exempt employee overtime premiums when they knew or should have known such employees worked any time over 40 hours in a work week.

115.    Plaintiff, and the class of similarly situated, are thus entitled to an equal sum in overtime wages owed at rates of one and one half times their regular rates of pay as liquidated damages. See *Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

116.    Defendants knowingly and willfully failed to track the hours worked by Plaintiff and for all persons employed in the position of clinical accessor in violation of the FLSA and 29 CFR Part 576.

117.    Defendants encouraged and pressured clinical accessors to work as many hours as they had to in order to meet or exceed production requirements or metrics while simultaneously discouraging and warning them against reporting having worked more than 40 hours during the

workweek, including any weekend time.

118.   Again, the FLSA required Defendants to pay the overtime wages when they know employees "worked" over 40 hours in any work week, and does not permit an employer to escape or nullify its obligations by placing the duty on the employee to formally submit the hours and make a claim for overtime pay.

119.   Regardless, the entire company policies and procedures related to work hours are oppressive, misleading and intended to discourage and prevent clinical accessors from ever making a request or claim for overtime pay due to fear and intimidation of being terminated from employment.

120.   Defendants made clear to the Clinical Accessors that they were not going to be paid overtime wages and that requesting such was going to subject them to heightened scrutiny, discipline and potentially termination.

121.   Defendants have failed to make, keep, and preserve accurate time records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 *et. seq*., including 29 USC Sec. 211(c) and 215 (a).

122.   To summarize, Defendants have willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiffs and the class of similarly situated employees by:  a) willfully

withholding payment of overtime wages when they knew or should have known Plaintiffs and the class of clinical accessors actually worked over 40 hours and were non-exempt employees; b) misleading and falsely advising Plaintiffs that they were not entitled to overtime pay; while simultaneously discouraging clinical accessors against reporting more than 40 hours worked in any week; and c) not properly tracking and recording all work hours of clinical accessors; and alternatively d) misclassifying them as exempt from overtime pay.

123. As a result of Defendants' willful violations of the FLSA, Plaintiff and the similarly situated collective members have suffered economic damages by Defendants' willful failure to pay overtime compensation in accordance with FLSA §207 and unlawful pay practices.

124. Due to Defendants' willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to *29 U.S.C. §255(a)*.

125. As a result of Defendants' unlawful acts and pay practices, complained of herein, Plaintiff and all other similarly situated present and former employees working as inside sales representatives under various job titles, have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated

damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to *29 U.S.C. §216(b)*, as well as injunctive relief pursuant to *29 U.S.C. §217*.

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated past and present persons employed as LTSS clinical accessors or clinical specialists who worked for Defendants in the 3 years preceding the filing of this complaint to the present, seek the following the following relief:

a. That Plaintiff be authorized to send notice of this Section 216b collective action to all past and present clinical accessors employed by CAREBRIDGE MEDICAL GROUP PC INC., RSV QOZB LTSS, INC. d/b/a CAREBRIDGE HEALTH, AND ELEVANCE HEALTH INC. at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice

b. Designate the Named Plaintiff as Representatives of the Collective or Class for purposes of engaging in mediation, with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding.

c. That the Court enter judgment declaring the Defendants' actions and conduct to be in violation of the overtime compensation provisions of the FLSA, specifically section 207(a), and in violation of the record keeping requirements of 29 CFR part 516;

d. That the Court find and declare Defendants' violations of the

FLSA were and are willful and lacking any good faith or safe harbor basis under the FLSA;

e.     That the Court enjoin Defendants under to *29 U.S.C. § 217*, from withholding future payment of overtime compensation owed to members of the Collective or Class.

f.     That the Court award to Plaintiff and the Plaintiff Class or Collective, comprised of all similarly situated employees, overtime compensation at a rate of one and one half time their regular rates of pay, including the value of all compensation earned, for all previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to pre-judgment interest on said award pursuant to FLSA §216 and all other related economic losses;

g.     That the Court award Plaintiff and all other persons who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

h.     That the Court issue in order of judgment under 29 U.S.C 216-17, 28 U.S.C. 2201 and 2202 finding that the Defendants unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees in violation of 29 CFR part 516, as well as issue an INJUNCTION barring the Defendants from further violating the FLSA;

i.     That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

j.     That the Court hold Defendants jointly and severally liable for all damages awarded by this court or the jury, and including holding Defendant Elevance Health Inc. liable for the violations of Defendants Carebridge under the doctrine of successor liability.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Submitted this 20th day of January 2025

*/s/ Mitchell L. Feldman, Esquire*
Mitchell Feldman, Esq.
FELDMAN LEGAL GROUP
FL BAR NO: 0080349
12610 RACE TRACK ROAD #225
TAMPA, FL 33625
T: (813) 639-9366
F: (813) 639-9376
mfeldman@flandgatrialattorneys.com
mail@feldmanlegal.us
*Lead Attorney for Plaintiff and class*
of similarly situated