# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| LIZA NORTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAREBRIDGE MEDICAL GROUP PC INC., RSV QOZB LTSS, INC., and ELEVANCE HEALTH INC., d/b/a CAREBRIDGE HEALTH<br><br>Defendants. | Case No.: 8:25-cv-00153-WFJ-NHA |

## DEFENDANTS CAREBRIDGE MEDICAL GROUP, P.C. AND RSV QOZB LTSS, INC.'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Defendants CareBridge Medical Group, P.C. ("PC") (incorrectly captioned as "CareBridge Medical Group PC Inc.") and RSV QOZB LTSS, INC. ("RSV") by and through its attorneys, Seyfarth Shaw LLP, hereby submit this Answer to Plaintiff's Amended Complaint as follows:

## RECITATION OF FACTS

### COMPLAINT ¶ 1:

Pursuant to a national, common policy and unlawful pay practice and scheme to avoid it overtime pay obligations under the FLSA, Carebridge both pressured and permitted a group of workers under the title of "Clinical Assessor" aka LTSS Clinical Assessor or LTSS Clinical Specialist or variations of these titles to suffer to work overtime hours without pay by either willfully misclassifying these positions as exempt, or just willfully violated the FLSA and refused to pay overtime premiums to these non-exempt employees in order to save millions of dollars in labor costs and increase profits.

**ANSWER:**

Denied.

**COMPLAINT ¶ 2:**

Putting it succinctly, Defendants willfully engaged in conduct which was deceptive and misleading, including presenting purposefully misleading and vague communications and statements intended to confuse these employees over their classification and exemption status under the FLSA, and to dissuade or deter these employees claiming or complaining about working overtime hours with any premiums for such hours worked.

**ANSWER:**

Denied.

**COMPLAINT ¶ 3:**

Plaintiff Norton, and other similarly situated Clinical Assessor employees were unlawfully not compensated for all hours worked over 40 in every work week and were permitted to suffer to work off the clock in violation of the FLSA.

**ANSWER:**

Denied.

**COMPLAINT ¶ 4:**

Defendant Carebridge Medical Group PC INC. and Defendant RSV QOZB LTSS, INC., upon information and belief, did business under the name or tradename Carebridge and/or Carebridge Health and for all purposes were an integrated business enterprise. For purposes of this action, Plaintiff refers to these 2 corporation defendants as the "Carebridge entities", who along with their recent purchaser in 2024 and now parent corporation, Defendant, Elevance Health Inc. (ELV) collectively in this action as are referred to as "defendants" or Carebridge.

**ANSWER:**

Denied.

**COMPLAINT ¶ 5:**

The Carebridge entities, and its new owners, Elevance Health Inc. (ELV) have improperly and willfully withheld and refused to pay Plaintiff and all Clinical

2

Assessors overtime wages and a premium for overtime hours worked and at the correct lawful rates; Defendants willfully misclassified the Clinical Assessor position as exempt from overtime pay.

**ANSWER:**

Denied.

**COMPLAINT ¶ 6:**

At the very least, Defendants acted with reckless disregard for their obligations under the FLSA to pay Clinical Assessors overtime premiums for all hours worked over 40 in every workweek.

**ANSWER:**

Denied.

**COMPLAINT ¶ 7:**

Plaintiff and similarly situated Clinical Assessors do not qualify for the administrative exemption because they were not allowed to hire, fire, mentor, or discipline any employees, and their primary job duty did not involve the exercise and discretion of independent judgment in matters of significance; alternatively, they were involved in "production": processing assessment forms to be delivered to its insurance company clients.

**ANSWER:**

Denied.

**COMPLAINT ¶ 8:**

Under the FLSA, an administrative employee is defined as an employee who has "discretion and independent judgment with respect to matters of significance." 29 C.F.R. §541.200. In order to possess such discretion, the employee must have the authority to make "independent choice[s], free from immediate direction or supervision...even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. §541.202(c).

**ANSWER:**

Paragraph 8 of the Amended Complaint contains legal statements and

conclusions, not allegations against Defendants. Therefore, no response is required.

3

**COMPLAINT ¶ 9:**

The Clinical Assessors' primary duties involved routines and adherence to policies and procedures from manuals and guides; and they were mandated and instructed and pressured to come up with reports to justify cuts in home health aide hours such as by 13% regardless of whether the Clinical Assessor believed any hours were reasonable to cut or were harmful to the patients involved. They were stripped of the ability to use their independent discretion and judgment as licensed therapists in performing their work for Defendants.

**ANSWER:**

Denied.

**COMPLAINT ¶ 10:**

Clinical assessors, like obedient soldiers, carried out the management's orders under warnings and threats of written disciplinary action, including termination of employment if they failed to publish or issue assessments/reports calling for the mandated cut %.

**ANSWER:**

Denied.

**COMPLAINT ¶ 11:**

While everyone, including a grocery bagger has some level of discretion on how to carry out their day-to-day job duties, people are not robots and Plaintiff, and all Clinical Assessors had some limited ability to justify in these reports/assessments the reasons for recommending the curing of the home health care hours.

**ANSWER:**

Defendants admit that "people are not robots." Defendants further admit that Plaintiff and members of the proposed collective did have the ability to make recommendations, and employed discretion and independent judgment with respect to matters of significance. Defendants deny the remaining allegations in Paragraph 11 of the Amended Complaint.

4

**COMPLAINT ¶ 12:**

In essence, Defendants pressured Plaintiff and all other clinical assessors to abandon their duties and obligations as licensed clinical therapists and therapy assistants in favor of pumping out report or assessment one after the other which its insurance company clients, like United Health Care, could use to cut the money it would pay out for Medicare based, home health aides and the amount of care it had to pay for its policyholders.

**ANSWER:**

Denied.

**COMPLAINT ¶ 13:**

In other words, the job duties and responsibilities, or requirements of the job of a Clinical Assessor were standardized for all Clinical Assessors.

**ANSWER:**

Denied.

**COMPLAINT ¶ 14:**

Defendants willfully failed to comply with the record keeping requirements of the FLSA and DOL regulations for the FLSA found at 29 CFR Part 516.

**ANSWER:**

Denied.

**COMPLAINT ¶ 15:**

The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion. Plaintiff reserves all right to plead in the alternative.

**ANSWER:**

Paragraph 15 of the Amended Complaint contains legal statements and

conclusions, not allegations against Defendants. Therefore, no response is required.

5

## JURISDICTION & VENUE

**COMPLAINT ¶ 16:**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action involves a federal question pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 (b).

**ANSWER:**

Admitted.

**COMPLAINT ¶ 17:**

This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**

Paragraph 17 of the Amended Complaint contains legal statements and

conclusions, not allegations against Defendants. Therefore, no response is required.

**COMPLAINT ¶ 18:**

This Court has personal jurisdiction over the Defendants, because the Defendants operate substantial and continuous business in this District, employing numerous employees working from their homes here, and because the damages at issue occurred within this District. Thus, under Florida's Long Arm Statute F.S. 48.193, each Defendant is subject to personal jurisdiction in this action.

**ANSWER:**

Denied.

**COMPLAINT ¶ 19:**

Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, and Defendant routinely does business within this district.

**ANSWER:**

Denied.

6

**COMPLAINT ¶ 20:**

The overtime wage provisions set forth in FLSA §207 apply to Defendants, as it engages in interstate commerce under the definition of the FLSA. At all relevant times, Defendants engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203 as a common business enterprise. Additionally, Defendants each earned more than $500,000 in revenue during each year from 2021 to 2024 and employed hundreds to one thousand and more employees during this time.

**ANSWER:**

Admitted.

## THE PARTIES

*Representative Plaintiff, LIZA NORTON*

**COMPLAINT ¶ 21:**

Liza Norton resides in Lakeland, Florida. She was hired to work for "Carebridge Health" on January 30, 2023, under the title and in the position of "LTSS Clinical Assessor", (hereinafter Clinical Assessor) and continued in this position until her separation from employment on or about July 24, 2023.

**ANSWER:**

Defendants admit that PC employed Norton as a "LTSS Clinical Assessor" from about January 2023 to about July 2023. Defendants lack knowledge or information sufficient to form a belief about the location of Plaintiff's home. Defendants deny the remaining allegations in Paragraph 21 of the Amended Complaint.

**COMPLAINT ¶ 22:**

Plaintiff's paychecks show she was paid by Defendant CAREBRIDGE MEDICAL GROUP PC INC., but in all company records, papers, and communications, Defendant and plaintiff solely referenced Defendant to as "Carebridge" or Carebridge Health, secretly concealing the full corporation's name whom Plaintiff was employed by.

**ANSWER:**

Defendants admit that Plaintiff's paychecks show that she was paid by Defendant PC. Defendants further admit that some employment and other documents mention "CareBridge." Defendants deny the remaining allegations in Paragraph 22 of the Amended Complaint.

**COMPLAINT ¶ 23:**

The Carebridge employee manual provided to Plaintiff likewise indicates Plaintiff was employed by "Carebridge" and "Carebridge Health" who is referred to as Plaintiffs employer.

**ANSWER:**

Admitted.

**COMPLAINT ¶ 24:**

Plaintiff was hired in a wave of approximately 40 other persons in this position, all of whom worked remotely from their homes in differing states in the USA.

**ANSWER:**

Admitted.

**COMPLAINT ¶ 25:**

The job training Plaintiff received after being hired demonstrated a commanded uniformity Defendant expected in the performance of the job duties and responsibilities by the new recruits: you complete these form assessments in one single method, and they must come out to justify the cuts in home health aide time we demand upon you. In other words, do them our company way and abandon your discretion and opinions, or it's the highway for you, meaning say goodbye to your job.

**ANSWER:**

Denied.

**COMPLAINT ¶ 26:**

At all times material, Plaintiff worked as a Clinical Assessor from her home in

Lakeland, Florida.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the

location of Plaintiff's home or where precisely she worked when working remotely,

and therefore denies the allegations in Paragraph 26 of the Amended Complaint.

**COMPLAINT ¶ 27:**

Plaintiff's work was highly supervised, micro-managed, and scrutinized on a daily and weekly basis by a manager.

**ANSWER:**

Denied.

**COMPLAINT ¶ 28:**

Plaintiff last worked for Defendants on or about July 27, 2023, when she was terminated after complaining about numerous actions of Defendant, including the willful refusal to pay her overtime premiums for hours worked for all the past hours worked over 40 in any workweek.

**ANSWER:**

Defendants admit that Plaintiff's employment with PC was terminated in July

2023. Defendants deny the remaining allegations in Paragraph 28 of the Amended

Complaint.

**COMPLAINT ¶ 29:**

When hired, Plaintiff was led to believe the position was a 40 hour per week job, and that she was being paid on a "salary basis", although she was never informed of any exemption under the FLSA Defendants were claiming applied to her role nor did they ever dare put in writing that she was exempt from overtime pay.

**ANSWER:**

Defendants admit that Plaintiff was paid on a "salary basis." Defendants deny

the remaining allegations in Paragraph 29 of the Amended Complaint.

**COMPLAINT ¶ 30:**

Meanwhile, Defendants in direct conflict with the idea and point of being a salaried exempt employee, pressured Clinical Assessors not to seek to report overtime hours worked.

**ANSWER:**

Paragraph 30 of the Amended Complaint is phrased in a nonsensical and confusing manner. Defendants state that Plaintiff was classified as exempt from overtime under the FLSA and was not required to record her time worked. Defendants deny any remaining allegations in Paragraph 30 of the Amended Complaint.

**COMPLAINT ¶ 31:**

Meanwhile, Defendants both encouraged and pressured Clinical assessors to work as many hours as necessary to keep up with job duties and responsibilities.

**ANSWER:**

Defendants admit that Plaintiff was encouraged to fulfill her job duties and responsibilities. Defendants deny the remaining allegations in Paragraph 31 of the Amended Complaint.

**COMPLAINT ¶ 32:**

Defendants led Plaintiff to believe that she was properly classified as exempt from overtime pay and thus not legally entitled to such overtime pay, going so far as actually telling Plaintiff that no matter how many overtime hours she worked, she would not be paid a premium for these hours.

**ANSWER:**

Defendants admit that Plaintiff was properly classified as exempt from overtime pay, and thus was not legally entitled to overtime pay.

10

**COMPLAINT ¶ 33:**

Plaintiff, like all Clinical Assessors, were assigned to work on a client insurance company's file (such as United Health Care), and upwards of 30 to 50 assigned as a workload.

**ANSWER:**

Defendants admit that Plaintiff provided guidance and recommendations to insurance companies. Defendants deny the remaining allegations in Paragraph 33 of the Amended Complaint.

**COMPLAINT ¶ 34:**

Plaintiff's primary job duty was to fill in information on the assessment form and report to justify the cutting of the number of hours needed for home health aide time and care in order to make the insurance company more money.

**ANSWER:**

Denied.

**COMPLAINT ¶ 35:**

Plaintiff, like other clinical assessors, were given a set weekly corporate schedule of 45 hours per week, 9-hour days with opportunity to take up to a 1-hour meal break; Plaintiffs standardized work schedule was 8 am to 5pm.

**ANSWER:**

Denied.

**COMPLAINT ¶ 36:**

Plaintiff routinely worked through much of this 1-hour meal break, including working while eating at her desk, or taking a short break of under 15 minutes to prepare a meal and to eat and then continued with work.

**ANSWER:**

Denied.

**COMPLAINT ¶ 37:**

At no time did Defendants explain that working through this 1 hour provided meal break was compensable overtime work hours and which could be claimed and paid.

**ANSWER:**

Paragraph 37 of the Amended Complaint contains legal statements and conclusions, not allegations against Defendants. Therefore, no response is required. If a response is required, Defendants deny any allegations in Paragraph 37 of the Amended Complaint and clarify that because Plaintiff was classified as exempt from the FLSA's minimum wage and overtime requirements, her pay was not subject to deduction based on the quantity or quality of her work.

**COMPLAINT ¶ 38:**

The plaintiff found it necessary to stay after the ending shift time and put in additional work hours to complete her job duties, attend appointments and make phone calls; she routinely worked greater than 45 hours per week throughout the term of her employment.

**ANSWER:**

Denied.

**COMPLAINT ¶ 39:**

Plaintiff similarly performed work on weekends using her laptop, and answering emails, and such work was not foreclosed, prohibited or discouraged, and moreover, management knew Clinical Assessors were accessing programs and performing work outside the office.

**ANSWER:**

Defendants admit that it does not have blockers in place to prevent work at certain times of the week. Defendants lack sufficient information to admit or deny whether Plaintiff performed work on the weekends, and therefore denies the remaining allegations in Paragraph 39 of the Amended Complaint.

**COMPLAINT ¶ 40:**

Defendant CAREBRIDGE MEDICAL GROUP PC INC. (CMGPI) is a wholly owned subsidiary of ELEVANCE HEALTH INC., a publicly traded (ELV) foreign (UK) international corporation and upon information and belief, also a wholly owned subsidiary of co-defendant, RSV QOZB LTSS, INC., but at minimum is affiliated and related. Its principal place of business is located at 926 Main Street, Nashville, Tennessee, 37206. It may be served through its designated Florida registered agent, Cogency Global Inc., at 115 North Calhoun Street, suite #4, Tallahassee, FL 32301.

**ANSWER:**

Defendants admits that PC is a foreign corporation, and has its principal place of business located at 926 Main Street, Nashville, Tennessee, 37206. Defendants deny the remaining allegations in Paragraph 40 of the Amended Complaint.

**COMPLAINT ¶ 41:**

Defendant RSV QOZB LTSS, INC. (RQLI) is a foreign, for-profit corporation, with principal place of business at the same office of Defendant Carebridge, located at 926 Main Street, Nashville, Tennessee, 37206. It may be through its Florida designated registered agent Cogency Global Inc., at 115 North Calhoun Street, suite #4, Tallahassee, FL 32301. According to the official records of the secretary of state for Tennessee, "Carebridge" is a business and name operated by this Defendant and thus may be just a trade name or fictitious business name, and upon information and belief is related and affiliated with co-defendant CMGPI, and now jointly owned by Elevance.

13

**ANSWER:**

Defendants admit that RSV is a foreign, for-profit corporation with its principal

place of business at 926 Main Street, Nashville, Tennessee, 37206. Defendants further

admit that RSV does business as CareBridge. Defendants further admit that Elevance

is the ultimate indirect parent and owner of RSV. Defendants deny the remaining

allegations in Paragraph 41 of the Amended Complaint.

**COMPLAINT ¶ 42:**

Defendant Elevance Health Inc. is a foreign, international corporation, and
publicly traded company (stock symbol ELV and herein ELV) who currently owns co-
defendants, Carebridge Medical and RSV QOZB LTSS, INC. since about November
or December 2024. ELV's principal place of business and corporate headquarters in
the U.S. located at 220 Virginia Avenue, Indianapolis, Indiana 46204. Defendants
may be served through its Florida designated registered agent CT corporation System
at 1200 S. Pine Island Road, Plantation, Fl 33324.

**ANSWER:**

Defendants admit that Elevance owns RSV. Defendants further admit that

Plaintiff has correctly identified Elevance's principal place of business, corporate

headquarters, and registered agent. Defendants deny the remaining allegations in

Paragraph 42 of the Amended Complaint.

**COMPLAINT ¶ 43:**

Pursuant To an Elevance Health Inc. 10-Q Quarterly report, Elevance Health
was buying Defendant Carebridge Medical and RSV QOZB LTSS, INC. who appears
to operate and does business as "Carebridge" or "Carebridge Health": and who is
believed to now wholly own defendants, Carbridge Medical Group PC Inc. and RSV
QOZB LTSS, INC.[1]

---

[1] On October 15, 2024, we entered into an agreement to acquire RSV QOZB LTSS,
Inc. and certain affiliated entities (d/b/a CareBridge), a value-based healthcare
company that manages home and community-based services for Medicaid and dual-

**ANSWER:**

Denied.

**COMPLAINT ¶ 44:**

As stated by Defendant Elevance Health's 10k 2023 annual report, Elevance (ELV) claims to be: "We are one of the largest health insurers in the United States in terms of medical membership, serving approximately 47 million medical members through our affiliated health plans as of December 31, 2023.".

**ANSWER:**

Admitted.

**COMPLAINT ¶ 45:**

Upon information and belief, at peak times within the preceding 3 years of the filing of this complaint, Defendant employed 200 or more Clinical Assessors working at or reporting remotely to its corporate office located at 926 Main Street, Nashville, Tennessee.

**ANSWER:**

Denied.

**COMPLAINT ¶ 46:**

Given turnover, Plaintiff estimates that the putative class of similarly situated Clinical Assessors to be in the range of 400 persons who worked as Clinical Assessors within the preceding 3 years from the filing of this complaint.

**ANSWER:**

Denied.

---

eligible populations receiving long-term services and support. This acquisition aligns with Carelon Service's care at home strategy, and our vision to be an innovative, valuable and inclusive healthcare partner by providing care management programs that improve the lives of the people we serve. The acquisition is expected to close in the fourth quarter of 2024 or first quarter of 2025 and is subject to standard closing conditions and customary approvals.

**COMPLAINT ¶ 47:**

Carebridge and Elevance are both Plaintiff's employers within the meaning of 29 U.S.C. § 203(d), and joint employers under the law.

**ANSWER:**

Denied.

**COMPLAINT ¶ 48:**

Defendant Elevance is an integrated business enterprise and now owner of the Defendant Carebridge entities; RSV QOZB LTSS, INC. and Carbridge Medical Group PC Inc.

**ANSWER:**

Denied.

**COMPLAINT ¶ 49:**

Elevance, since the purchase of the Carebridge entities, is the joint employer of all those similarly situated under as defined in the FLSA and is subject to successor liability for claims of all former and present employees of the Carebridge entities.

**ANSWER:**

Denied.

**COMPLAINT ¶ 50:**

At all times within the preceding 3 years, Clinical Assessors were jointly employed by Carebridge Medical Group PC Inc. and RSV QOZB LTSS, INC., meaning they were the joint employers of Norton, and all others similarly situated who performed work for the benefit of both Defendants.

**ANSWER:**

Denied.

**COMPLAINT ¶ 51:**

Defendants Carebridge Medical Group PC Inc. and RSV QOZB LTSS, INC. operated as an integrated business enterprise, with shared officers, offices, company policies and procedures and jointly did business under the name(s) Carebridge and

Carebridge Health.

**ANSWER:**

Defendants state that Paragraph 51 of the Amended Complaint contains just legal conclusions to which no response is required.

**COMPLAINT ¶ 52:**

Norton and the similarly situated Clinical Assessors followed and were governed by Carebridge Health company policies and procedures, and thus both Carebridge entities directed their work, regardless of whether they in fact were paid by Carebridge Medical Group PC INC., (RQLI) or some other yet unknown wholly owned subsidiary or affiliated company.

**ANSWER:**

Denied.

## THE LEGAL CLAIMS FOR UNPAID OVERTIME HOURS WORKED AND DEFENDANTS' UNLAWFUL PAY PRACTICES

**COMPLAINT ¶ 53:**

This FLSA Section 216b "collective action" lawsuit arises from an ongoing wrongful scheme by Defendants to willfully refuse to pay overtime wages to a large class of non-exempt workers and employees, the LTSS Clinical Assessors, who Defendants knows routinely suffered to work overtime hours without being paid for all these hours to meet performance metrics or production requirements.

**ANSWER:**

Denied.

**COMPLAINT ¶ 54:**

Alternatively, Defendants willfully misclassified all Clinical Assessors over the preceding 3 years, through the present as salaried, exempt employees, including continuing to classify this position as salaried exempt under the newly assigned job title of "Clinical Specialist", or "LTSS Clinical Specialist".

**ANSWER:**

Denied.

**COMPLAINT ¶ 55:**

Defendants' unlawful pay practices applicable or either willfully misclassifying clinical assessors as exempt or just willfully refusing to pay overtime premiums and operating a De Facto Rule along with failing to record the work hours of non-exempt employees was designed to save the Defendants many millions of dollars in labor costs and increase profits at the expense of and to the financial detriment its workers. In other words, Defendants willfully stole from the Clinical Assessors wages they knew or should have known were owed to them.

**ANSWER:**

Denied.

**COMPLAINT ¶ 56:**

The FLSA does not require non-exempt employees to have to "claim" or submit a claim for overtime hours as a condition for being paid for these hours, especially where the Defendants knew, know or should have known, that such employees are working overtime hours.

**ANSWER:**

Denied.

**COMPLAINT ¶ 57:**

Here, Defendants have maintained a pressure campaign, combined with misinformation, misclassification, intimidation and the actions of willfully choosing to not institute any time tracking system to dissuade clinical assessors from claiming or seeking pay for their overtime hours.

**ANSWER:**

Denied.

**COMPLAINT ¶ 58:**

Further, the Defendants discouraged Clinical Assessors from claiming overtime pursuant to a De Facto policy which included telling them that they are not entitled to overtime pay while warning them against self- reporting any overtime hours to the company for pay.

**ANSWER:**

Defendants state that "Clinical Assessors" were properly classified as exempt and therefore not entitled to overtime pay. Defendants deny the remaining allegations in Paragraph 58 of the Amended Complaint.

**COMPLAINT ¶ 59:**

Plaintiff, like all other clinical assessors/specialists may have actually been classified by Defendants as "salaried non-exempt employees" who were misled to believe they were not entitled to be paid a premium for any overtime hours worked by misinformation and misrepresentation by Defendants.

**ANSWER:**

Denied.

**COMPLAINT ¶ 60:**

Regardless, all clinical assessors were paid pursuant to the same common pay plan: a base salary stated in an annual sum and told they were not entitled to overtime pay.

**ANSWER:**

Denied.

**COMPLAINT ¶ 61:**

Upon information and belief, Norton, and most clinical assessors were never informed in writing whether they were classified as "exempt " or "non-exempt employees under the FLSA.

**ANSWER:**

Denied.

**THE COLLECTIVE OF SIMILARLY SITUATED: A CLASS OF LTSS CLINICAL ASSESSORS aka CLINICAL SPECIALISTS**

**COMPLAINT ¶ 62:**

Plaintiff brings this suit individually, and on behalf of all similarly situated

19

persons composed of the following Class members:

> **All employees working as LTSS Clinical Assessors, Clinical Assessors, LTSS Clinical Specialists or Clinical Specialists, or any other job title used to describe these same positions and who are currently employed or were previously employed by Carebridge Medical Group PC Inc., RSV QOZB LTSS, INC. doing business as Carebridge Health, or who are now employed by ELEVAN HEALTH INC. or its wholly owned subsidiaries, anywhere within the U.S. within the past three years preceding the filing of this lawsuit to the date of the closure of any authorized Notice Period in this action.**

**ANSWER:**

Defendants admit that Plaintiff proposes bringing this action as a collective action based on the definition in Paragraph 62 of the Amended Complaint. Defendants deny that there are any similarly situated employees to Plaintiff, and deny that collective litigation is appropriate in this case. Defendants deny any remaining allegations in Paragraph 62 of the Amended Complaint.

## GENERAL FACTUAL COLLECTIVE ACTION ALLEGATIONS

**COMPLAINT ¶ 63:**

Plaintiff is similarly situated to all these proposed Clinical Assessors as she was employed by Defendants under the titles of LTSS Clinical Assessor for Carebridge Health during the term of her employment and because: a) routinely worked more than 40 hours during the work weeks in order to complete her job duties and responsibilities, and b) she was paid under the same common pay structure/plan applicable to all other clinical assessors: a base salary and told she was not entitled or eligible for overtime pay for hours worked over 40 in any workweek, and c) is familiar with Defendants' policies, procedures, and unlawful pay practices.

**ANSWER:**

Denied.

**COMPLAINT ¶ 64:**

Despite Defendants later changing the job title of the Clinical Assessor to include the word "specialist", Clinical Assessors were stripped of their discretion in

20

the conclusion and the assessment, and the reports/assessments had better show the mandated cuts or the employees would need to find another job.

**ANSWER:**

Denied.

**COMPLAINT ¶ 65:**

Upon information and belief, all Clinical Assessors were compensated on a salary basis and were not asked nor required to report or clock in and out for their work time and report their actual work hours.

**ANSWER:**

Admitted.

**COMPLAINT ¶ 66:**

While Defendants never expressly or explicitly put in writing whether Plaintiff and clinical assessors were classified by Defendants as "exempt" from overtime pay under the FLSA, they verbally made it clear to Plaintiff and other Clinical Assessors that they were not going to pay for any overtime hours worked and stated they were paid on a salary basis.

**ANSWER:**

Defendants admit that Plaintiff and other "Clinical Assessors" were aware that

they were classified as exempt, and that they were paid on a salary basis.

**COMPLAINT ¶ 67:**

During this relevant 3-year claim period, Defendants treated Plaintiff and all other Clinical Assessors as salaried employees wherein defendants did not comply with record keeping requirements of the FLSA and CRF and did not pay them overtime premiums for hours they knew were being worked over 40 in any workweek.

**ANSWER:**

Defendants admit that Plaintiff and other "Clinical Assessors" were correctly

classified as exempt under the FLSA. Defendants deny committing any recordkeeping

violations. Defendants admit that Plaintiff was not paid "overtime premiums."

21

**COMPLAINT ¶ 68:**

Norton's primary job duty in her positions was to conduct phone-based health assessments, known internally as Carebridge Functional & Environmental Recommendations (CFER), which are ultimately used by Defendant's health insurance company to justify reductions in caregiver hours for vulnerable populations.

**ANSWER:**

Denied.

**COMPLAINT ¶ 69:**

In these assessment forms, Clinical Assessors had to fill in information to justify curing the hours for home health aides to a mandatory and set %, such as 8% or 13%, and to complete a set number, such as 4 each workday.

**ANSWER:**

Denied.

**COMPLAINT ¶ 70:**

Upon information and belief, the clinical assessors across the US all were paid pursuant to a common pay plan of a base salary and informed that they were either not entitled to or eligible for overtime pay.

**ANSWER:**

Defendants admit that "clinical assessors" were paid on a salary basis and were not entitled to or eligible for overtime pay, and they were informed and aware of this. Defendants deny the remaining allegations in Paragraph 70 of the Amended Complaint.

**COMPLAINT ¶ 71:**

All Clinical Assessors were subject to the same job requirements, and all were performing their job duties in similar manners pursuant to standardized company policies and procedures and training.

**ANSWER:**

Denied.

**COMPLAINT ¶ 72:**

Upon information and belief, Defendants used misinformation and misleading communications to lead clinical assessors to believe they were either salaried exempt employees or just not legally entitled to be paid for overtime hours by proclaiming as a policy: "we don't pay overtime".

**ANSWER:**

Defendants deny that "lead clinical assessors" were misled. Defendants admit that clinical assessors were correctly classified as exempt from minimum wage and overtime requirements under the FLSA, and therefore not paid overtime premiums even if they ever worked more than 40 hours per week. Defendants deny the remaining allegations in Paragraph 72 of the Amended Complaint.

**COMPLAINT ¶ 73:**

Defendants failed to advise Plaintiff and all clinical assessors that as per the FLSA, a meal break which is not at least 30 minutes of "uninterrupted, non-work activity break" is to be counted as work hours and to be reported and paid, compensable time, even if doing so put the employee into overtime hours.

**ANSWER:**

Defendants deny that it "failed" to provide the inaccurate legal statement contained in Paragraph 73 of the Amended Complaint. Defendants deny the remaining allegations in Paragraph 73 of the Amended Complaint.

**COMPLAINT ¶ 74:**

Defendants pressured clinical assessors to work as many hours as needed to hit production goals or quotas, aka performance metrics such as completing 4 assessments per day, and pressured them to do so under fear of termination of employment, while simultaneously discouraging the reporting of overtime hours or seeking to make a

23

claim for overtime pay.

**ANSWER:**

Denied.

**<u>COMPLAINT ¶ 75:</u>**

All clinical assessors were purposefully misled by Defendants to believe they were not legally entitled to overtime pay as exempt employees and/or salaried employees, and Defendants willfully chose not to institute any time tracking system to report work hours and meal break times.

**ANSWER:**

Denied.

**<u>COMPLAINT ¶ 76:</u>**

Defendants absolutely knew that clinical assessors routinely worked overtime hours, as managers and supervisors witnessed the extra hours, and knew and could monitor and see them accessing databases, and computer systems, outside and beyond their assigned work schedules, and may have as well communicated with them directly outside their work schedules discussing work matters.

**ANSWER:**

Denied.

**<u>COMPLAINT ¶ 77:</u>**

This is in addition to hearing complaints from clinical assessors about the high amount of work hours necessary to complete their job duties and beyond the standard corporate work schedule assigned.

**ANSWER:**

Denied.

**<u>COMPLAINT ¶ 78:</u>**

Defendants pressured Clinical Assessors to work more hours by warning of termination if they did not complete the assigned number of assessments each day.

**ANSWER:**

Denied.

**COMPLAINT ¶ 79:**

Further, Defendants willfully discouraged clinical assessors from reporting overtime hours by both misleading them into believing that it was a lawful pay practice to say simply we don't pay overtime wages, or you are not entitled to it, and by warning of disciplinary action if the Clinical assessors sought to formally report and claim overtime hours worked.

**ANSWER:**

Denied.

**COMPLAINT ¶ 80:**

Meanwhile, Defendants both knew the position required overtime hours to be worked and encouraged and pressured Plaintiff and clinical assessors to work as many hours as needed to meet performance expectations.

**ANSWER:**

Denied.

**COMPLAINT ¶ 81:**

Alternatively, upon information and belief, Defendants classified Clinical Assessors as Salaried, non-exempt employees, rather than salaried exempt employees, the stats and the fact which was willfully concealed from Plaintiff and other clinical assessors.

**ANSWER:**

Denied.

**COMPLAINT ¶ 82:**

Defendants have willfully failed to pay Plaintiff, and all similarly situated clinical assessor employees in accordance with the Fair Labor Standards Act (FLSA). Specifically, Plaintiff and similarly situated employees were not paid time and a half of their regular rate pay for all hours worked in excess of forty (40) hours per week, nor paid any premium for the overtime hours worked.

**ANSWER:**

Denied.

**COMPLAINT ¶ 83:**

Plaintiff Norton and the similarly situated employees did not and currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendants' pay practices are not only clearly unlawful but are UNFAIR as well.

**ANSWER:**

Denied.

**COMPLAINT ¶ 84:**

Plaintiff, like all clinical assessors, were assigned a corporate, standardized weekly work schedule of 9-hour workdays such as from 8:00 am to 5:00 pm Monday through Friday which was a 45-hour workweek.

**ANSWER:**

Denied.

**COMPLAINT ¶ 85:**

Defendants automatically deducted 1 hour from each work day for meal breaks, whether the employee took a non-working break of just 15 or 30 minutes or 1 hour which was allotted for the clinical assessors and without regard to whether these employees took some, part or none of this time for non-working, uninterrupted meal break time.

**ANSWER:**

Denied.

**COMPLAINT ¶ 86:**

Thus, Plaintiff Norton routinely worked more than 40 hours each week during the term of her employment just by adhering to the corporate work schedule of 8 am to 5pm because she frequently took less than the 1-hour meal break permitted. No company policy or procedure permitted Plaintiff to report or claim this time and be paid for it.

**ANSWER:**

Denied.

**COMPLAINT ¶ 87:**

The Defendants maintained a company-wide policy throughout the relevant 3-year class period of willfully refusing to pay overtime wages or any premium pay for overtime hours worked for Clinical Assessors or specialists despite clear knowledge they have been working overtime hours, and as classified under the FLSA, non-exempt employees were automatically due to be paid such wages.

**ANSWER:**

Denied.

**COMPLAINT ¶ 88:**

Clinical Assessors had production requirements or performance metrics which included the requirement to complete four full assessments daily, each involving lengthy and detailed processes that cannot reasonably be completed in the typical 8 hours of allotted work time in each day.

**ANSWER:**

Denied.

**COMPLAINT ¶ 89:**

To meet these production requirements, clinical assessors are forced to work more than 8 hours in a day, and work hours even on weekends, evenings and during the 1-hour meal breaks, the time of which is not tracked or recorded.

**ANSWER:**

Denied.

**COMPLAINT ¶ 90:**

Meanwhile, Defendants warned clinical assessors against claiming or asking for overtime pay for the overtime hours it both knows and expects will be incurred by clinical assessors in keeping up with the work assigned and the production or performance metrics and requirements.

**ANSWER:**

Denied.

**COMPLAINT ¶ 91:**

Management threatens clinical assessors with disciplinary action and financial harm if they do not meet these production standards or performance metrics, including threats of reducing their pay, and termination of employment for failing to meet these metrics.

**ANSWER:**

Denied.

**COMPLAINT ¶ 92:**

Defendants maintained a De Facto off the clock policy (although there technically was not a time clock system), in which inside clinical assessors were intentionally misled about their exemption status and entitlement to overtime pay and put in fear of submitting work hours and for overtime wages.

**ANSWER:**

Denied.

**COMPLAINT ¶ 93:**

At no time during the relevant 3-year time period did Defendants formally discipline clinical assessors for working hours beyond the standard assigned shift, and not only did they know clinical assessors did so and logged into computer databases on weekends and evenings, but they encouraged it.

**ANSWER:**

Denied.

**COMPLAINT ¶ 94:**

All clinical assessors across the U.S. followed standardized company policies and procedures applicable to all, including uniform, standardized and common job requirements for working as clinical assessors

**ANSWER:**

Denied.

**COMPLAINT ¶ 95:**

All clinical assessors had similar, standardized job requirements.

**ANSWER:**

Denied.

**COMPLAINT ¶ 96:**

All Clinical Assessors performed routine day to day job functions whose primary job duty was completing Carebridge's proprietary assessment forms and reports.

**ANSWER:**

Denied.

**COMPLAINT ¶ 97:**

These primary job duties include conducting phone-based health assessments, known internally as Carebridge Functional & Environmental Recommendations (CFER), which are ultimately used to justify reductions in caregiver hours for vulnerable populations. These CFER are also referred to by the company as OT/PT assessments.

**ANSWER:**

Denied.

**COMPLAINT ¶ 98:**

The position of clinical assessor suffered from a high turnover rate, with employees leaving for reasons which include frustration over required overtime hours and the lack of pay.

**ANSWER:**

Denied.

**COMPLAINT ¶ 99:**

Plaintiff, as well as the members of the putative class of similarly situated employees, routinely worked through part or all of their lunch breaks and also performed other work incidental to their job at home.

**ANSWER:**

Denied.

**COMPLAINT ¶ 100:**

Many required and requisite interviews and phone calls necessary to complete the CFERS had taken place in the evening hours to accommodate patients and family members who could not be reached during regular business hours.

**ANSWER:**

Denied.

**COMPLAINT ¶ 101:**

Pursuant to FLSA §207, Defendants, as the joint employers of Plaintiff and the similarly situated employees, were in the past and are currently required to pay an overtime premium for all hours worked in excess of forty (40) hours per week for non-exempt employees, or including hourly paid employees.

**ANSWER:**

Paragraph 101 of the Amended Complaint contains just legal conclusions which do not require a response. To the extent a response is required, Defendants deny the allegations in Paragraph 101 of the Amended Complaint, and expressly deny that Defendants were "joint employers of Plaintiff," or that there were any "similarly situated" employees.

**COMPLAINT ¶ 102:**

Defendants clearly knew or should have known, that these clinical assessors do not satisfy any exemption, specifically: they fail the administrative exemption as their primary job duty is akin to production, and does not involve the exercise of discretion and independent judgment in matters of significance affecting the company; and the

30

work stripped them of using their independent discretion and judgment and performing the actual work of licensed clinical therapists.

**ANSWER:**

Denied.

## COMPLAINT ¶ 103:

Defendants' representations and communications to employees about the company's obligations under the FLSA and the employees' rights to overtime pay were false and intentionally misleading, as well as unlawful and unfair, as was the entire De Facto overtime policy and failure to track and record on a timekeeping system the employees accurate and actual work hours.

**ANSWER:**

Denied.

## COMPLAINT ¶ 104:

All clinical assessors were trained to perform their job duties and expected to perform their job duties in similar manners throughout their multiple offices, aside from the variances for the separate product lines.

**ANSWER:**

Denied.

## COMPLAINT ¶ 105:

Evidence reflecting or demonstrating the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

**ANSWER:**

Defendants admit that it possesses information relevant to the compensation

that Plaintiff was paid. Defendants admit that they have access to records relating to

when Plaintiff worked. Defendants deny that there is any "class. Defendants deny the

remaining allegations in Paragraph 105 of the Amended Complaint.

31

**COMPLAINT ¶ 106:**

However, and to the extent ESI records are unavailable, Plaintiff, and members of the Class, may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

**ANSWER:**

Paragraph 106 of the Amended Complaint contains just legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 106 of the Amended Complaint.

**COUNT I**
**VIOLATIONS OF FLSA §207 FOR FAILURE TO PAY OVERTIME PREMIUMS, AND ACTION FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202**

**COMPLAINT ¶ 107:**

Plaintiff alleges and incorporates by reference all preceding paragraphs of this Complaint and fully restates and re-allege all facts and claims herein.

**ANSWER:**

Amended Complaint Paragraph 107 consists of a statement of incorporation, to which no response is required.  To the extent that a response is required,  Defendants incorporate their responses to the preceding paragraphs.

**COMPLAINT ¶ 108:**

Plaintiff, and all other similarly situated employees are currently now or have previously been covered under FLSA §207 as employees.

**ANSWER:**

Plaintiff is not employed by any Defendant. RSV admits it previously employed Plaintiff. Defendants deny the remaining allegations in Paragraph 108 of the Amended

Complaint.

**COMPLAINT ¶ 109:**

Defendants have willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA by failing to compensate all persons working as clinical assessors under the various job titles identified in this complaint as required pursuant to the FLSA overtime wage provisions during one or more weeks.

**ANSWER:**

Denied.

**COMPLAINT ¶ 110:**

Plaintiff and collective group of similarly situated current and former persons (often referred to as the class) who worked for Defendants as Clinical Assessors suffered the same damages as they were denied overtime compensation or premiums for hours worked over 40 in each and every workweek in violation of the FLSA §207 because defendant willfully misclassified them as Exempt under the FLSA. The only conceivable and possible or arguable FLSA exemption the Defendant could argue is the "Administrative Exemption", but the same cannot be proven by Defendants.

**ANSWER:**

Denied.

**COMPLAINT ¶ 111:**

Alternatively, Defendants classified all Plaintiffs as salaried, non-exempt, but misinformed them, misled them of their non-exempt status and entitlement to overtime premiums, and then willfully refused to pay overtime premiums for hours worked over 40 it knew and should have known were occurring.

**ANSWER:**

Denied.

**COMPLAINT ¶ 112:**

Plaintiff and all those similarly situated are employees of Defendants during their time as contemplated by 29 U.S.C. § 203.

**ANSWER:**

Denied.

**COMPLAINT ¶ 113:**

Defendants do not and cannot have a good faith basis for failing to pay Plaintiff and the class of Clinical Assessors overtime pay, particularly here when they either knew clinical assessors were working overtime and did not track their work hours, or alternatively, willfully misclassified them as exempt.

**ANSWER:**

Denied.

**COMPLAINT ¶ 114:**

Further, Defendants were aware and clearly knew Plaintiff's work and the position of clinical assessor itself involved non-exempt job duties and was subject to the time tracking requirements of the FLSA which mandated that Defendants automatically pay any non-exempt employee overtime premiums when they knew or should have known such employees worked any time over 40 hours in a work week.

**ANSWER:**

Denied.

**COMPLAINT ¶ 115:**

Plaintiff, and the class of similarly situated, are thus entitled to an equal sum in overtime wages owed at rates of one- and one-half times their regular rates of pay as liquidated damages. *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

**ANSWER:**

Denied.

**COMPLAINT ¶ 116:**

Defendants knowingly and willfully failed to track the hours worked by Plaintiff and for all persons employed in the position of clinical assessor in violation of the FLSA and 29 CFR Part 576.

**ANSWER:**

Denied.

**COMPLAINT ¶ 117:**

Defendants encouraged and pressured clinical assessors to work as many hours as they had to in order to meet or exceed production requirements or metrics while simultaneously discouraging and warning them against reporting having worked more than 40 hours during the workweek, including any weekend time.

**ANSWER:**

Denied.

**COMPLAINT ¶ 118:**

Again, the FLSA required Defendants to pay the overtime wages when they know employees "worked" over 40 hours in any work week and does not permit an employer to escape or nullify its obligations by placing the duty on the employee to formally submit the hours and make a claim for overtime pay.

**ANSWER:**

Amended Complaint Paragraph 118 contains just legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 118 of the Amended Complaint.

**COMPLAINT ¶ 119:**

Regardless, the entire company policies and procedures related to work hours are oppressive, misleading and intended to discourage and prevent clinical assessors from ever making a request or claim for overtime pay due to fear and intimidation of being terminated from employment.

**ANSWER:**

Denied.

**COMPLAINT ¶ 120:**

Defendants made clear to the Clinical Assessors that they were not going to be paid overtime wages and that requesting such was going to subject them to heightened

scrutiny, discipline and potentially termination.

**ANSWER:**

Denied.

## COMPLAINT ¶ 121:

Defendants have failed to make, keep, and preserve accurate time records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et. seq., including 29 USC Sec. 211(c) and 215 (a).

**ANSWER:**

Denied.

## COMPLAINT ¶ 122:

To summarize, Defendants have willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiff and the class of similarly situated employees by: a) willfully withholding payment of overtime wages when they knew or should have known Plaintiff and the class of clinical assessors actually worked over 40 hours and were non-exempt employees; b) misleading and falsely advising Plaintiff and clinical assessors they were not entitled to overtime pay while simultaneously discouraging them against reporting more than 40 hours worked in any week; and c) not properly tracking and recording all work hours of clinical assessors; and alternatively d) misclassifying them as exempt from overtime pay.

**ANSWER:**

Denied.

## COMPLAINT ¶ 123:

As a result of Defendants' willful violations of the FLSA, Plaintiff and the similarly situated collective members have suffered economic damages by Defendants' willful failure to pay overtime compensation in accordance with FLSA §207 and unlawful pay practices.

**ANSWER:**

Denied.

**COMPLAINT ¶ 124:**

Due to Defendants' willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to 29 U.S.C. §255(a).

**ANSWER:**

Denied.

**COMPLAINT ¶ 125:**

As a result of Defendants' unlawful acts and pay practices, complained of herein, Plaintiff and all other similarly situated present and former employees working as Clinical Assessors or Clinical Specialists or under various job titles for the same position, have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §216(b), as well as injunctive relief pursuant to 29 U.S.C. §217.

**ANSWER:**

Denied.

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated past and present persons employed as LTSS clinical assessors or clinical specialists who worked for Defendants in the 3 years preceding the filing of this complaint to the present, seek the following the following relief:

a. That Plaintiff be authorized to send notice of this Section 216b collective action to all past and present clinical assessors employed by CAREBRIDGE MEDICAL GROUP PC INC., RSV QOZB LTSS, INC. d/b/a CAREBRIDGE HEALTH, AND ELEVANCE HEALTH INC. at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice

b. Designate the Named Plaintiff as Representatives of the Collective or Class for purposes of engaging in mediation, with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding.

c. That the Court enter judgment declaring the Defendants' actions and

37

conduct to be in violation of the overtime compensation provisions of the FLSA, specifically section 207(a), and in violation of the record keeping requirements of 29 CFR part 516;

d. That the Court find and declare Defendants' violations of the FLSA were and are willful and lacking any good faith or safe harbor basis under the FLSA;

e. That the Court enjoin Defendants under to 29 U.S.C. § 217, from withholding future payment of overtime compensation owed to members of the Collective or Class.

f. That the Court award to Plaintiff and the Plaintiff Class or Collective, comprised of all similarly situated employees, overtime compensation at a rate of one and one half time their regular rates of pay, including the value of all compensation earned, for all previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to pre judgment interest on said award pursuant to FLSA §216 and all other related economic losses;

g. That the Court award Plaintiff and all other persons who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

h. That the Court issue in order of judgment under 29 U.S.C 216¬17, 28 U.S.C. 2201 and 2202 finding that the Defendants unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees in violation of 29 CFR part 516, as well as issue an INJUNCTION barring the Defendants from further violating the FLSA;

i. That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

j. That the Court hold Defendants jointly and severally liable for all damages awarded by this court or the jury and including holding Defendant Elevance Health Inc. liable for the violations of Defendants Carebridge under the doctrine of successor liability.

**ANSWER:**

Denied.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

**ANSWER:**

Defendants demand a trial by jury.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

(Failure to State a Claim)

Plaintiff's Amended Complaint fails to state a claim, in whole or in part, against Defendants upon which relief may be granted, either on her own behalf or on behalf of those persons she purports to include or represent in this lawsuit.

### SECOND DEFENSE

(Statute of Limitations)

Plaintiff's claims, and those of any proposed members of the alleged collective, are barred or limited by the applicable statute of limitations.

### THIRD DEFENSE

(Personal Jurisdiction)

Many of the actual and putative collective action members are barred from participating in this case because they did not work or live in Florida, and therefore lack the requisite "minimum contacts" with Florida to justify the Court's exercise of specific personal jurisdiction over their claims.

## FOURTH DEFENSE

### (Exempt)

Plaintiff's claims, and those of any opt-in plaintiffs, are barred pursuant to the minimum wage and overtime exemptions set forth under the FLSA, including, but not limited to the professional exemption, the administrative exemption, the combination exemption, and/or, depending on compensation, the highly compensated employee exemption.

## FIFTH DEFENSE

### (Release)

Subject to proof through discovery, some or all of Plaintiff's claims, and those of any opt-in plaintiffs, are barred, in whole or part, because they have released their claims.

## SIXTH DEFENSE

### (Waiver)

Subject to proof through discovery, some or all of Plaintiff's claims, and those of any opt-in plaintiffs, are barred based on waiver.

## SEVENTH DEFENSE

### (Accord and Satisfaction)

Subject to proof through discovery, some or all of Plaintiff's claims, and those of any opt-in plaintiffs, are barred, in whole or part, based on accord and satisfaction.

## EIGHTH DEFENSE

### (Not Similarly Situated)

Plaintiff's and the opt-in plaintiffs' claims may not be maintained on a collective

action basis under the FLSA because Plaintiff and the opt-ins are not similarly situated to one another or the putative collective action members and Plaintiff cannot establish the requirements for certification (conditional or otherwise) under 29 U.S.C. § 216(b) and other relevant legal authority.

## NINTH DEFENSE
### (Portal-to-Portal Act)

Plaintiff's claims, and those of any opt-in plaintiffs, are barred to the extent that some or all of the time they claim to have worked is not compensable pursuant to the provisions of the Portal-to Portal Act of 1947.

## TENTH DEFENSE
### (Unclean Hands)

Subject to proof through discovery, Plaintiff's claims, and those of any opt-in plaintiffs, are barred, in whole or in part, by the doctrine of unclean hands.

## ELEVENTH DEFENSE
### (Good Faith, §§ 258, 259)

Defendants state, in the alternative, if necessary, that they acted in good faith and in reasonable reliance on an administrative regulation, order, ruling, approval, or interpretation of the U.S. Department of Labor, or an administrative practice or enforcement policy of the U.S. Department of Labor with respect to the class of employers to which Defendant belongs. See 29 U.S.C. §§ 258 and 259.

## TWELFTH DEFENSE
### (Good Faith, § 260)

Defendants state, in the alternative, if necessary, that they may not be required

to pay liquidated damages because its acts or omissions were in good faith and Defendants had reasonable grounds for believing that their alleged acts or omissions were not in violation of the FLSA. *See* 29 U.S.C. § 260.

## THIRTEENTH DEFENSE
(Duplicative Recovery)

Pleading in the alternative, Plaintiff and the opt-in plaintiffs cannot recover both liquidated damages and pre-judgment interest because those forms of relief are duplicative of each other.

## FOURTEENTH DEFENSE
(Lack of Willfulness)

Defendants did not act in a willful, wanton, reckless, and/or malicious matter

## FIFTEENTH DEFENSE
(Compliance)

Defendants at all times, and in all manners, acted in accordance with any and all duties and obligations under the statutes and laws identified in the complaint and their respective regulations.

## SIXTEENTH DEFENSE
(Judicial Estoppel)

Subject to proof through discovery, Plaintiff's claims, and those of any opt-in plaintiffs, may be barred or limited by the doctrine of judicial estoppel. Specifically, if Plaintiff or any opt-in plaintiff makes representations in this lawsuit that are inconsistent with prior representations to another court or governmental agency, then those individuals may be barred by the doctrine of judicial estoppel.

42

## SEVENTEENTH DEFENSE
### (Res Judicata/Collateral Estoppel)

Subject to proof through discovery, some or all of Plaintiff's claims, and those of any opt-in plaintiffs, may be barred by the doctrines of res judicata and/or collateral estoppel to the extent that they asserted in any prior legal or administrative proceeding that they were entitled to payment for claims alleged in this Amended Complaint and did not prevail on such claim.

## EIGHTEENTH DEFENSE
### (Equitable Estoppel)

Plaintiff's claims, and those of any opt-in plaintiffs, may be barred or limited by the doctrine of estoppel to the extent they have made any contrary representations to relevant parties for pecuniary gain, such as insurers or the IRS.

## NINETEENTH DEFENSE
### (Setoff)

Without waiver of any argument or defense denying liability as to the claims in Plaintiff's Amended Complaint, Defendants are entitled to a set-off and/or credit for any amounts paid to Plaintiff, and any opt-in plaintiffs, that they were not entitled to receive, including, but not limited to, for work they never performed or for inadvertent overpayment.

## TWENTIETH DEFENSE
### (Full Payment)

Plaintiff and the opt-in plaintiffs have received full payment for all work performed, thereby barring their respective claims.

**TWENTY-FIRST DEFENSE**

(Unjust Enrichment)

Plaintiff's and the opt-in plaintiffs' claims are barred under the doctrine of unjust

enrichment.

DATED:  April 25, 2025                    Respectfully submitted,

                                          SEYFARTH SHAW LLP

                                          /s/ Kevin M. Young
                                          Kevin M. Young
                                          Florida Bar No. 114151
                                          kyoung@seyfarth.com
                                          Alexander W. Simon (pro hac vice)
                                          asimon@seyfarth.com
                                          SEYFARTH SHAW LLP
                                          1075 Peachtree St. NE, Suite 2500
                                          Atlanta, Georgia  30309-3958
                                          Telephone:  (404) 885-1500
                                          Facsimile:  (404) 892-7056

                                          Attorneys for Defendants
                                          CAREBRIDGE MEDICAL GROUP
                                          P.C., RSV QOZB LTSS, INC., and
                                          ELEVANCE HEALTH INC.

45

## CERTIFICATE OF SERVICE

I certify that on today's date, I electronically filed the foregoing document via

the Clerk of the Court using the court system which will notify all attorneys of record.


By: */s/ Kevin M. Young*
Kevin M. Young

45