## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LIZA NORTON, Individually and on
behalf of all Others similarly situated,

      Plaintiff,                     Case No: 8:25-cv-00153-WFJ-NHA

        v.

CAREBRIDGE MEDICAL GROUP
PC INC., RSV QOZB LTSS, INC.,
AND ELEVANCE HEALTH INC.,
d/b/a CAREBRIDGE HEALTH,

      Defendants.
_____.

### PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT AND ORDER AUTHORIZING NOTICE OF THIS SETTLEMENT

Plaintiff Liza Norton ("Named Plaintiff"), by and through the undersigned counsel, on behalf of the additional party plaintiffs that have opted into this action ("Opt-In Plaintiffs," and, collectively with Named Plaintiff, "Plaintiffs") and other individuals who are allegedly similarly situated (the "Collective Members") file this Unopposed Motion seeking approval of the Parties' Collective Action Settlement Agreement and authorizing notice of the settlement be delivered to the collective of similarly situated. The executed Settlement Agreement is attached as Exhibit 1.

## I.    STANDARD OF REVIEW

In the Eleventh Circuit, various courts have held that for a release of FLSA claims to be enforceable, the settlement must be either (1) supervised by the U.S.

Department of Labor approval; or (2) in the context of a collective action lawsuit filed pursuant to 29 U.S.C. § 216(b), reviewed and approved for fairness by a court of competent jurisdiction. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) *see also Sculte, Inc. v. Gandi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8, 90 L.Ed. 1114 (1946); *Jarrad v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947). In explaining the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation. See *Lynn's Food Stores*, 679 F.2d at 1354.

The standard for approval of an FLSA collective action settlement under Section 216(b) is lower than for a Rule 23 class action settlement because a Section 216(b) settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, *15 (S.D.N.Y. Mar. 2, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Id.* at 1354;

*McMahon*, 2010 U.S. Dist. LEXIS 18913 at *16; *Mohney*, 2009 U.S. Dist. LEXIS 27899 at *13. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores*, 679 F.2d at 1353. In determining whether an FLSA settlement is fair, the district court should examine four factors:

1. What the settlement achieved in an adversarial context?
2. Were the plaintiffs represented by attorneys who can protect their rights?
3. Does the settlement reflect a reasonable compromise over issues that are actually in dispute?
4. Is the settlement fair?

## II.   The Bona Fide Dispute Over the Claim for Overtime Premiums, History and Background:

Plaintiffs respectfully request that the Court approve the Parties' negotiated settlement of their claims and those of the Collective, comprised of present and formerly employed LTSS Clinical Assessors, LTSS Clinical Specialists or Therapy Services Specialists who worked for Carebridge Medical Group through December 2024, and those who worked for Defendant Elevance Health Inc. from January 1, 2025, as Therapy Services Specialists, (collectively, all job titles referred to as "Specialists").

The contested issues of fact and law in this action include (i) whether the Defendants can prove by a preponderance of evidence that the Specialists satisfy the elements of the FLSA's administrative exemption: (ii) how many hours Plaintiffs and Collective Members routinely worked during the relevant timeframe; (iii) whether the overtime rate of pay for back wages, if any, should be at the "time and a half" rate of

pay, or the "half-time" rate; (iv) whether Defendants can prove they had a good faith basis under the FLSA for its classification of Specialists as exempt; (v) whether a violation, if any, was willful in nature; and (vi) whether Plaintiffs and the Collective Members are "similarly situated" such that they could proceed collectively to trial.

While Defendants deny Plaintiffs' and the Collective Members' legal claims and factual allegations, the Parties reached a settlement of the claims, which the Parties agree is a fair and reasonable compromise of a bona fide dispute and which is deserving of approval by this Court.

Notably, if Defendants had prevailed on some or all of their legal defenses in this case, the Plaintiffs risked receiving less than they are receiving under this Settlement Agreement. Additionally, Defendants asserted good faith and reasonable grounds for its classification of the Specialist roles as exempt from the FLSA's overtime pay requirements pursuant to one or more exemptions, including the administrative exemption. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.200, *et seq.* The Plaintiffs do not know for sure how a judge or jury might rule on Defendants' exemption defense, nor the parties' arguments regarding good faith and willfulness, which impact whether damages would be available at all—and, if so, whether damages would be liquidated or unliquidated, and whether the recovery period would reach back two years or three. *See* 29 U.S.C. §§ 255, 260. Plaintiffs and the Collective Members had a real risk of a defense verdict or a summary judgment for Defendants and recover zero in this case.

Moreover, had this collective action proceeded through the collective action process, including potential full-blown discovery from Plaintiffs and Collective Members, the Parties would face what certainly would be a costly, protracted litigation that could last two or more years. After the completion of discovery, if a collective was certified at all, Defendants would likely file a motion to decertify, and both sides would likely move for summary judgment. Millions of dollars in fees could be expended just to reach that stage of the litigation, with more time and fees remaining to be expended depending on the Court's handling of the varied motions.

Moreover, Defendants filed a motion to transfer venue to the District of Tennessee, which Plaintiffs intended to oppose. The dispute over this motion would increase the time costs and expenses of this action.

Weighing all the inherent litigation risks and costs, and facing a foreseeable course of at least two more years of costly, time consuming, and disruptive litigation, the Parties agreed to attend an early mediation to attempt to resolve the matter on mutually agreeable terms.[1] On July 29, 2025, the parties attended a full-day mediation before experienced employment lawyer and mediator, Robyn S. Hankins, Esq. While the mediation did not result in a settlement that day, it proved invaluable for laying the foundation for the settlement reached shortly after mediation. While Defendants

---

[1] Motions for Conditional Certification of an FLSA collective action have taken 10 months to even begin pending. For instance, in *Retherford v. Hertz Corp*, No. 2:23-cv-719-JLB-NPM, in this District, Plaintiffs' Motion for Collective Action Conditional Certification has been pending since January 4, 2024, now 1 year and 9 months without a ruling.

adamantly deny Plaintiffs' claims, they agreed there was sufficient value and benefit to resolving the claims of Plaintiffs and the Collective Members all at once.

As per the terms of this Settlement Agreement, the Parties have agreed to establish a common fund in the gross sum of $2,280,000.00 for the wage claims of Plaintiffs and all Collective Members who, after notice, elect to participate in this settlement. After deduction for fees, costs, and the like, the net fund would then be distributed to each participating Plaintiff and Collective Member on a pro rata basis pursuant to a factor of each individual's total earnings during their respective three-year class period, then applying that factor against the net settlement amount to determine each Plaintiff's individual settlement payment. The Parties herein, by and through their experienced undersigned attorneys, represent to the Court that the settlement is fair and reasonable and stand behind this settlement.

Before, during, and after mediation, the Parties extensively discussed the alleged overtime hours and pay rates, and formulated their own proposed damage models, including best and worst case scenarios, based upon their independent calculations. The Parties vigorously debated their calculations, as well as the underlying law and facts germane to Plaintiffs' claims and Defendants' denials and defenses.

As a result of their detailed negotiations, the Parties, with advice of their respective experienced class and collective action attorneys, reached a compromise to resolve the claims of Plaintiffs and all Collective Members. All Parties were counseled and represented by their respective attorneys throughout litigation and mediation and exchanged information, records, and numerous legal arguments construing the FLSA.

The Parties reviewed and assessed the potential risks of litigation with their respective counsel. The Parties agree that the negotiated terms of settlement, as summarized below, reflects a reasonable, arms-length compromise of a bona fide dispute and all the disputed issues. Given the alleged nationwide scope of the lawsuit and the large amount of discovery issues and motions usually occurring in large collective actions such as this one, the settlement will help to conserve judicial resources as well.

III.    **All of the Relevant Criteria Supports Preliminary Approval of the Settlement Agreement as Fair, Adequate and Reasonable**

After scrutinizing the settlement, this Court should find that it is fair and reasonable and should be approved. First, the settlement was achieved in an adversarial context and in the absence of collusion weeks after a full day mediation paved the way for the settlement. The parties' FLSA Collective Action Settlement Agreement is the result of over 7 months of litigation, spirited discussions between counsel over the facts and law, the exchange of and review of various employer records and ESI, the declarations of the party Plaintiffs, and the full day mediation. "The federal courts have long recognized a strong policy and presumption in favor of class settlements." *George v. Acad. Mortg. Corp.*, 369 F.Supp.3d 1356, 1367 (N.D. Ga. 2019). "A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *City of L.A. v. Bankrate, Inc.* 2016 U.S. Dist. LEXIS 115071, No. 14-cv-81323, 2016 U.S. Dist. LEXIS 115071, at *14 (S.D. Fla. Aug. 24, 2016) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

Additionally, the use of a mediator further demonstrates that no collusion occurred. *Carpenters Health & Welfare Fund v. Coca-Cola Co.* 2008 U.S. Dist. LEXIS 121093, No. 1:00-CV-2838-WBH, 2008 U.S. Dist. LEXIS 121093, at *31 (N.D. Ga. Oct. 20, 2008) ("*See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").") In similar cases, courts have approved of pre-certification FLSA collective action settlements. See *Venable v. Jw Logistics, Llc*, 1:17-cv-03213-LMM Document 32 Filed 08/27/18; *Gillard et al v. Fleetmatics USA LLC*, Case No 8:16-cv-00-81 (MDFL); *Tarsa et al v. Marketsource and Honda*, Case No 1:19-cv-02684-WMR DE 88, Filed 08/12/20 (NDGA); *Austin v. N3 LLC and Accenture LLC*, Case no 1:21-cv-01354-TWT, (N.D. Ga. May 24, 2022); *Shallin v. Payless Shoe Source*, case no: 3:14-cv-00335-RNC, DE 137, Filed 06/10/15 (D. Conn); *Haggerty v. Reliant Pro Rehab LLC*, Case 1:22-cv-11329-WGY, DE 121 Filed 12/14/23 (D. Mass).

In deciding whether to approve the Settlement, the Court analyzes whether it is fair, adequate, and reasonable. *George v. Acad. Mortg. Corp.*, 369 F.Supp.3d 1356, 1369 (N.D. Ga. 2019); see also *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994). "A settlement is fair, reasonable, and adequate when the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued. Importantly, the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive

as much from a settlement as they might have recovered from victory at trial." *Id.* (internal citations omitted).

### A.    The Settlement Agreement Terms and Creation of a Common Fund

The Parties have agreed to the establishment of a common fund in the sum of Two Million Two Hundred and Eighty Thousand Dollars and Zero Cents ($2,280,000.00) from which the Plaintiffs and those collective members who after the proposed notice of settlement of this action is sent and elect to participate, will receive a share of the settlement that is to be distributed on a pro rata basis. The fund will also be used to pay administrative expenses of the settlement, and subject to Court approval, provide for the payment of attorney's fees and costs incurred to Plaintiffs' counsel.

### B.    The Settlement Averts Years of Complex and Expensive Litigation

"FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). As outlined, the FLSA claims and defenses are complex; litigating them would be both difficult and time-consuming. Although this Action was litigated for seven months before the Parties settled this matter, recovery by any means other than settlement would require additional years of litigation and trial.[2]

---

[2] *See also In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 n.3 (S.D. Fla. 2001); *Warren v. City of Tampa*, 693 F.Supp. 1051, 1055 (M.D. Fla. 1988) (record disclosed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989)). *See Lunsford*, 2014 WL 12740375, at *7 (citing *U.S. v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties'

### C.      The Settlement Was the Result of Arm's Length Negotiations Free from Collusion

The Agreement was the result of adversarial, arm's length negotiations that took place beginning with a full day mediation before experienced, collective action mediator Robyn Hankins, Esq.

In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Pickett v. IBP*, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. Dec. 21, 2001).

Here the Settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion. The Parties were able to settle this action only after they engaged in a vigorous and comprehensive vetting and attending a full mediation negotiating and arguing over numerous disputed issues of law and fact in this matter. *Diaz v. Hillsborough County Hos. Authority*, 2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (quoting *Cotton*, 559 F.2d at 1330) (absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel"). The extensive litigation activities, including the motions to Transfer and for Conditional Certification, show

---

attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial")).

the adversarial nature of this litigation and settlement. DE 40, 49. Therefore, the Court should find that the settlement was the result of arm's-length bargaining.

This Agreement bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiffs and Collective Members were represented by experienced counsel, who, in the "adversarial context of a lawsuit" engaged in "serious, informed, arms-length negotiations" of "a bona fide dispute with respect to coverage [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. See *Lynn's Foods*, 679 F.2d at 1353-54.

### D. <u>The Distribution of Settlement Payments Is Equitable</u>

With respect to the net amount available for individual settlement payments to the Plaintiffs and the Collective Members who accept the Settlement and consent to participate, (collectively, the "Qualified Plaintiffs"), they will be paid pursuant to the formula calculated and agreed to by the Parties. *See* Exhibit 1 at §5.6 of the Settlement Agreement.

Under the Settlement Agreement, the CareBridge Period is defined as the time period from January 20, 2022 to December 16, 2024. Each Qualified Plaintiff will receive $16 for each week they worked during the CareBridge Period. The Settlement Administrator will allocate $16.00 for every workweek the Plaintiffs and Collective Members worked during the CareBridge Period and this total amount will be deducted from the Net Fund. The remaining funds in the Net Fund will then be allocated to the Covered Period.

The Covered Period is defined as the period from January 20, 2022 to July 30, 2025. Any Qualified Plaintiff that worked for the Defendants during the Covered Period will receive a pro rata share of the remaining fund. These remaining funds will be allocated based on "Settlement Shares" which will be calculated as the Number of Workweeks in a Relevant Role during the Covered Period multiplied by the (Final Weekly Salary ÷ 52). The remaining Net Fund will be divided by the total Settlement Shares to determine the "Per-Share Value." Lastly, each Qualified Plaintiff will receive under Section 5.6(a)(ii) of the Settlement Agreement the equivalent of the Per-Share Value multiplied by the total number of Settlement Shares accrued by that individual.

The above CareBridge Period enhanced allocation is intended to account for information, investigation, claims, and declarations of the Plaintiffs and the evidence developed by Plaintiffs' counsel, including information from discussions with Defendants' counsel specific to the CareBridge Period as compared to the Elevance Period. The declarations from CareBridge Plaintiffs claimed a substantially greater amount of hours worked during that period as compared to the Elevance period, as reported by an Elevance Plaintiff in this action.

Here, Plaintiffs' counsel successfully negotiated on behalf of the entire Collective that a three-year statute of limitations would apply, and that the limitations period for all members would be tolled as of May 19, 2025, meaning that the effective opt-in date for every person that has not opted in would be, at the latest, May 19, 2025, even if they were to opt-in on a later date. In order to arrive at the common fund

amount, Defendants produced to Plaintiffs the salary and start and end dates of employment for 290 Plaintiffs and possible Collective Members.

Distributions from the Settlement fund will be equitable and based upon each person's salary rate and workweeks within the class period for Defendants in accordance with the terms of the Settlement Agreement. This is meant to account for variations in salary and duration of employment.

### E.    Approval At This Stage Is Fair, Reasonable and Should Be Encouraged by the Court

Courts encourage early settlement of class actions because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *Hernandez v. Merrill Lynch & Co., Inc.*, 2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); see *Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. Jun. 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement); see also *Diaz v. E. Locating Serv. Inc.*, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case). Similarly, in In *re United States Oil & Gas Litig.*, the court noted that public policy strongly favors the pretrial settlement of class action lawsuits, as complex litigation can deplete resources and delay meaningful relief. 967 F.2d 489 (11th Cir. 1992). In, *George v. Acad. Mortg. Corp.*, the court emphasized the "overriding public interest in favor of settlement" in class action suits, citing the

conservation of judicial resources as a key reason for this policy. 369 F. Supp. 3d 1356, 1367 (N.D. Ga. 2019).

Early settlement in class cases is favored, and full-blown discovery is not necessary. *See, e.g., Lipuma*, 406 F. Supp. 2d at 1324 (SDFL). The Parties here acted responsibly in reaching an early settlement agreement and the Collective Members will benefit by having the opportunity to opt-into this action, with full disclosure of the terms of the settlement agreement, without having to file their own separate lawsuits. Moreover, if any Collective Member should decide not to opt-into this collective action then they will not be bound by the terms of the Settlement Agreement and maintain their right to pursue their own claims, unlike in a Rule 23 class action, where they would be bound if they failed to opt out or ignored the notice.

This Settlement Agreement provides substantial monetary relief that is fair, reasonable, and adequate, and therefore supports approval pursuant to *Lynn's Food Stores, Inc.*, at 1352-53. Here, Plaintiff Norton and Plaintiffs' counsel negotiated a settlement that benefits all those who have opted in and those that may opt-in in the future. The Settlement Agreement also contemplates the payment of liquidated damages and a three-year Statute of Limitations.

**F**. **The benefits provided by the settlement are fair, adequate, and reasonable compared to the range of possible recovery**.

"In determining whether a settlement is fair given the potential range of recovery, the Court is guided by the principle that 'the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is

unfair or inadequate.'" *George*, 369 F. Supp. 3d at 1371 (internal citations omitted); *see also Lunsford,* 2014 WL 12740375, at *8 (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial").

Here, the settlement payment represents approximately 4.375 hours per week plus liquidated damages for every workweek each Plaintiff and collective Member worked over the approximate total applicable workweeks of 16,892.00 going back for the full 3-year SOL using the Eleventh Circuit's half time approach for salaried employees. Plaintiffs' counsel prepared complex damages models that incorporated the claimed average hours for the current Plaintiffs, records produced by Plaintiffs and exchanged by the parties. While the average claimed hours by Plaintiffs was higher, at approximately 10 hours per week, this was based on a small number of persons as compared to the entire collective. Moreover, the estimated average hours worked per week were without regard to weeks in which the person took PTO or missed time from work. Similarly here, the Plaintiffs and the collective members who elect to participate will receive a payment for every week they worked, regardless of whether they would legally have any right to be paid overtime wages, such as where they missed a full day or less and never worked the base 40 hours of time.

"The total settlement amount is fair and reasonable given the obstacles confronted and the complexity of the action, and the significant barriers that stood between the pre-settlement status of the case and final judgment, including the

prospect of contested class certification/decertification and potential interlocutory Rule 23(f) appeal of any order granting class certification; motions for summary judgment; trial; and post-trial appeals." *George*, 369 F.Supp.3d at 1372. Moreover, an FLSA settlement "will, almost by definition, be reasonable" where, as here, "the parties are represented by competent counsel in an adversary context." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (quoting *Bonetti v. Embarq Management Co*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2018)).

## G. The One Stage Approval Process Is an Approved Methodology in FLSA Settlements

In FLSA collective action pre-certification settlements, courts generally approve of a one-stage settlement process.[3] See *Venable v. Jw Logistics, Llc*, 1:17-cv-03213-LMM DE 32 Filed 08/27/18; *Gillard et al v. Fleetmatics USA LLC*, Case No 8:16-cv-00-81 (M.D. Fla.); *Tarsa et al v. Marketsource and Honda*, Case No. 1:19-cv-02684-WMR, DE 88, (NDGA Aug. 12, 2020); *Austin v. N3 LLC,* No. 1:21-CV-1354-TWT, 2022 U.S. Dist. LEXIS 37013 DE 75,(N.D. Ga. May 24, 2022); *Shallin v. Payless Shoe Source*, Case No. 3:14-cv-00335-RNC, DE 137,(D. Conn. June 10, 2015); *Vogenberger v. ATC*

---

[3] *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Bozak v. Fedex Ground Package Sys.*, Inc., No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *1-2 (D. Conn. May 23, 2013); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, et al., 2012 WL 3060470, at *2 (D. Conn. July 26, 2012); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011); *Raymer v. Mollenhauer*, No. 10 Civ. 210, 2011 WL 338825, at *1 (N.D. Ind. Jan. 31, 2011).

*Fitness Cape Coral, LLC*, No. 2:14-cv-436-FtM-29CM, 2015 U.S. Dist. LEXIS 53960, at *11 (M.D. Fla. Apr. 15, 2015); *Haggerty v. Reliant Pro Rehab LLC*, Case No. 1:22-cv-11329-WGY, DE 121, (D. Mass Dec. 14, 2023).

Section 216(b) does not require a "fairness" hearing which is otherwise required for settlements of class actions brought pursuant to FRCP Rule 23, which binds all putative class members to the case and settlement outcome, unless class members affirmatively opt-out of the class administration. *Martinez v. Silveira*, 2011 U.S. Dist. LEXIS 143865 (E.D. Cal. Dec. 13, 2011). This is because, unlike a Rule 23 class action where all putative class members are joined in the action unless they affirmatively opt-out, under 29 U.S.C. § 216(b) of the FLSA, Collective members must "opt-in" to the Collective by filing a written consent with the court to be bound by the outcome of the case.

Because there is no Rule 23 class in this matter, the Court does not need to conduct a two-step fairness analysis of the settlement. Rather, the Court needs only to analyze the settlement to ensure that it is fair and reasonable under the circumstances and then to approve it. See, e.g., *Singleton v. AT&T Mobility Services, LLC*, 146 F. Supp.3d 258, 260 (D. Mass. 2015) ("The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'") quoting *Lynn's Food Stores, Inc*, 679 F.2d at 1355.

Each Collective Member that receives a Notice will be provided a description of the settlement methodology which will fully explain to them how their individual settlement share was determined. Therefore, the opt-in procedure under 29 U.S.C. § 216(b) of the FLSA protects against any putative Collective Member from being a part of a settlement which they do not wish to be a part of. Any Collective Members who decide not to opt-in to this lawsuit, after being fully apprised of the terms of the Settlement Agreement, will retain all the rights they otherwise have under any wage and hour laws. Therefore, there is no need for a "fairness" hearing to protect Collective Members from being bound to an agreement they would otherwise object to because such protections have already been accounted for in the Agreement and Notice procedures. See Exhibits to the Settlement Agreement. What the Named Plaintiff and the Defendants herein have agreed to is to set up a settlement fund and give each and every member of the putative Collective the option to share in that fund. No Collective Member is bound by this Settlement, unlike in a Rule 23 class action, which unless they affirmatively opt out, wipes out their legal rights and their claims. Thus, courts, including this Court, agree that early settlement of a large collective action, even at the pre-certification stage, not only is fair and reasonable, but in the best interests of all.

Similarly, in *Austin v. N3 LLC*, the court approved of the parties pre-certification settlement for the collective approval of Notice to be sent out along with a Consent to Join form to participate in the settlement to members of the collective. No. 1:21-CV-1354-TWT, (N.D. Ga. May 24, 2022); *see also Venable v. JW Logistics, Supra*, (approving a pre-notice FLSA national collective action without need for any secondary fairness

hearing); *Vogenberger v. ATC Fitness Cape Corl LLC,* (supra) *Ruddell v. Manfre*, No. 3:14-cv-873-J-34MCR, 2015 U.S. Dist. LEXIS 155257 (M.D. Fla. Nov. 17, 2015).

**H**. **The Notice of Settlement and Consent to Join/Claim Form Should be Approved.**

To facilitate this Settlement, this Court should authorize notice of this Settlement to provide Collective Members the opportunity to participate through the distribution of opt-in forms under section 216(b). *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989); *Dybach v. State of Fla.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008). The notice procedures provided under Section 216(b) permit collective members the opportunity to participate in the settlement by filing a consent to join form, making them a party plaintiff to this action, while also providing the option to collective members who do not wish to participate in this settlement, a notice which explains their rights to file their own individual claims should they choose to while not being bound by the settlement here. The proposed Notice of Settlement and Consent to Join/Claim Form contained in Exhibits to the Settlement Agreement fairly and clearly inform Collective Members of their legal options with respect to participating, or not, in the settlement of this litigation, and that they are not bound by this settlement if the collective member does not wish to participate.

**I**. **Defendants Stipulate that Plaintiffs and the Collective Members Are Similarly Situated**

For settlement purposes only, the Defendants agree and stipulate that the Plaintiffs and the Collective Members are "similarly situated" for purposes of 29 U.S.C. § 216(b) of the FLSA and jointly request the Court approve Notice of this Settlement and the Right to Participate be sent to the present and former employees who are the collective members. Defendants further represent that as presented in the Plaintiffs' pending motion for Conditional Certification, (DE 49), the Plaintiffs are similarly situated as would be necessary for approval at stage 1 of the *Hipp* 2 stage collective action approval process. The parties will send notice to collective members as follows:

> **All persons who performed work as a LTSS Clinical Assessor, LTSS Clinical Specialist, or Therapy Services Specialist at either CareBridge or Elevance Health at any time between January 20, 2022, and July 30, 2025 (the "Settlement Collective")**

While Defendants stipulate to Plaintiffs and the collective members being similarly situated for purposes of this settlement, Defendants do not waive their right to challenge and oppose Plaintiffs' pending <u>Motion For Conditional Collective Action Certification And Court Supervised Issuance Of Notice</u>, (DE 49) in the unlikely event that this settlement is not approved by the Court.

## IV.    Plaintiff's Attorney's Fees and Costs

The Settlement Agreement provides for Plaintiffs' counsel to receive up to 33.33% (⅓) of the Gross Fund as a reasonable amount of attorneys' fees (often referred to as a common fund fee). Defendants do not oppose this fee request of thirty-three percent (33.33%) of the gross settlement amount, and represent that the requested fee

is fair and reasonable. This Court in a similar FLSA collective action case approved of the plaintiffs' attorneys receiving ⅓ or 33.33% of the gross common fund as their fees and declared the same as reasonable on the face and consistent with awards in similar cases in this District. *Dozier v. Dbi Servs.,* No. 3:18-cv-972-BJD-MCR, 2021 U.S. Dist. LEXIS 245359, at *28-30 (M.D. Fla. Dec. 22, 2021). See Order approving Report and Recommendation: *Dozier v. Dbi Servs.*, No. 3:18-cv-972-BJD-MCR, 2022 U.S. Dist. LEXIS 10912 (M.D. Fla. Jan. 19, 2022); *Garnick v. Verizon Connect Inc.*, (order approving 33.33% (⅓) of gross common fund) 8:20-cv-01474-MSS-TGW  DE 143 (MDFL  05/10/22); *Angione, et al. v. PSS World Medical, Inc.*, 3:02-00854 (M.D. Fla. Nov. 5, 2004) (approving attorneys' fees constituting 40% of common fund established for the benefit of 63 plaintiffs for unpaid overtime wages in case brought under FLSA and California labor law); *Vogenberger v. ATC Fitness Cape Coral, LLC*, No. 2:14-cv-436-FtM-29CM, 2015 U.S. Dist. LEXIS 53960, at *11 (M.D. Fla. Apr. 15, 2015)(held that requested ⅓ fee appears reasonable on its face, and the court does not need to do a more in depth review); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee... which is one-third (33.33%) of the settlement fund, is awarded from the settlement fund to the plaintiff's Lead Counsel. This amount is fair and reasonable in light of... fee awards in comparable cases.") (Merryday, J.).

This Court and courts in the 11th Circuit have held that a ⅓ fee of a gross common fund in an FLSA case is standard, fair, and reasonable in cases such as this

FLSA collective action case. *See, e.g.*, *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356 (N.D. Ga. 2019) (also approving the requested 33.33% attorney's fee in an FLSA Collective Action Settlement); *Austin v. N3 LLC*, No. 1:21-CV-1354-TWT, (N.D. Ga. May 24, 2022) (same); *Evans v. Intertape Polymer Corp.*, No. 8:23-cv-1042-KKM-AAS, 2025 U.S. Dist. LEXIS 204583, at *10-11 (M.D. Fla. May 5, 2025) (same); *Hair v. Grantive Telcom,* Case No 9:17-cv-81361-DLB DE 69 (FLSD 11/09/2018) (approving ⅓ of fund as plaintiffs' reasonable fee); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.")

Plaintiffs' counsel thus seeks approval of an attorneys' fee of 33.33% (1/3) of the $2,280,000.00 gross settlement, which is $759,924.00, to reasonably compensate them for their hard work litigating and securing this settlement while working on a contingency fee basis and carrying the risks of a zero recovery.  In addition, Plaintiffs' counsel will most certainly have to continue to counsel upwards of 290 Plaintiff collective members who receive notice of this settlement such that many more hours of attorney time may still yet lie ahead as to which this fee is to cover. Aside from their time during the pendency of this action, Plaintiffs' counsel spent many hours preceding the filing of the complaint, performing necessary investigation and preliminary legal work to prepare this large scale FLSA collective action.

US Supreme Court and Eleventh Circuit authority support the notion that "attorneys who create a common fund are entitled to be compensated for their efforts

from a reasonable percentage of that fund." *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008); *citing Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1362 (S.D.Fla. 2011) ("[T]he Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions"). Likewise, another court within this District has reiterated that the percentage-of-fund method is the preferred method for compensating plaintiff attorneys in class and collective actions involving recovery of a settlement fund. *Signorelli v. UtiliQuest, LLC*, No. 5:08-cv-38-OC-10GRJ, 2008 WL 7825757, LEXIS 109357 (MDFL 07/25/2008).

"Courts within this Circuit have awarded attorney's fees of approximately one-third of a common fund in FLSA and wage and hour cases." *George,* 369 F. Supp. 3d at 1382 (approving Common Fund that provides Class Counsel's fee paid at 33% of the $925,000 gross Settlement Fund, and an additional amount for costs and settlement administration costs); *See also Reyes v. AT & T Mobility Servs., Ltd. Liab. Co.*, No. 10-20837-Civ, 2013 WL 12219252, at *3, 2013 U.S. Dist. LEXIS 202820, at *10 (S.D.Fla. June 21, 2013) (approving fees for FLSA collective action settlement, holding "Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.); *Adams v. Gilead Group, LLC, et al.*, Case No. 3:16- cv-

1566-J-PDB, DE 107 (June 25, 2019) (awarding 33% of the Settlement fund in an FLSA collective action, and an additional $9,996.94 for costs); *Freeman v. Trainingwheel Corp., LLC*, 2020 WL 7401488 (M.D. Fla. June 26, 2020) (approving common Fund in FLSA Collective Action that provides plaintiff's counsel fees of 1/3 the Gross Settlement amount and reimbursement of their out-of-pocket costs).[4]

In *Garcia v. Amazon.Com, Inc.*, the court also approved a fee of one third (33.33%) of the gross settlement fund. No. 8:21-cv-803-CPT, 2023 U.S. Dist. LEXIS 77577 (M.D. Fla. May 1, 2023). *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99-md-01317-PAS, Doc. No. 1557 at 8-10, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund as plaintiffs' counsel prosecuted case on a contingency fee basis)

In an FLSA collective action, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." *Vogenberger v. ATC Fitness Cape Coral, LLC*, 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015); *Hosier v. Mattress*

---

[4] See also *Vogenberger*, 2015 WL 1883537 (awarding 33% of common fund to plaintiff's counsel in FLSA collective action); *Kemper v. Rent-A-Center, Inc.*, No. 4:00-cv-00435-RH-WCS [Dkts. 14-15] (N.D. Fla. 2000) (same); *Graves v. Estes Heating & Air Conditioning, Inc.*, Case No. 3:14-cv-0084- TCB, Dkt. 47 (N.D. Ga. 2015) (awarding fee of 33.33% of the common fund in FLSA case); *Encarnacion v. J.W. Lee, Inc.*, 2015 WL 6437686, at *4 (S.D. Fla. Oct. 22, 2015) (approving class and FLSA collective action settlement of $6,000,000, which included $1,641,686.06 as attorneys' fees and $18,763.94 for costs.); *Stahl*, 2008 WL 2267469 (Approving attorney award of 28.8% of the $13,137,365 common fund, or $3,659,365 for fees and costs in wage and hour class action); *Signorelli v. Utiliquest LLC*, 5:08-cv-38-OC-10GRJ, Docket Entry 46 (July 25, 2008) (Hodges, J.) (awarding $3,000,000.00 for attorneys' fees out of the $10,000,000.00 common fund); *Kreher v. City of Atlanta, Georgia*, 2008 WL 113999561 (N.D. Ga. Sept. 30, 2008) (Approving common fund in FLSA Collective action that provides plaintiff's counsel $2,410,000 from a $7,500,000 common fund, or 32.13%); *Mosley v. Lozano Ins. Adjusters*, 2021 U.S. Dist. LEXIS 15971, No. 3:19-cv-379-J-32JRK, (M.D. Fla. Jan. 11, 2021).

*Firm, Inc.*, 2012 WL 2813960 (M.D. Fla. June 8, 2012). Moreover, "The lodestar approach should not be imposed through the back door via a 'crosscheck.'" *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d at 1362. Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1256 (C.D. Cal. 1997). Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. See, e.g., *David v. American Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010). "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden I,* 946 F.2d at 774 (citations and alterations omitted).

The percentage of the Maximum Settlement Amount is the preferred method for compensating plaintiff's attorneys in class and FLSA collective actions involving recovery of a settlement fund. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356. Plaintiffs' counsel's request for approval of a ⅓ fee of the gross settlement fund falls within the range of the private marketplace, "where contingency-fee arrangements are often between 30 and 40 percent of any recovery." *Id.* at 1383; *See Haggerty v. Reliant Rehab Pro LLC*, Case No. 1:22-cv-11329-WGY, (D. Mass Dec. 14, 2023) (approving attorney fees of ⅓ of the gross fund recovered in nationwide FLSA collective action).

The FLSA provides for a mandatory award of "[c]osts of the action to a prevailing plaintiff." *See* 29 U.S.C. § 216(b); *Glenn v. Gen Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988). The Eleventh Circuit has expressly stated that "[w]here cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) [of the Federal Rules of Civil Procedure] and 28 U.S.C. §§ 1920 and 1923(a) do not apply." *Dowdell v. Apopka*, 698 F.2d 1181, 1188-89, 1191-92 (11th Cir. 1983) (collecting fee-shifting cases awarding expense reimbursements such as travel liberally and as appropriate to the specific litigation). "Reasonable litigation expenses are ordinarily included in an award of a statutory attorneys' fee." *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313 (M.D. Fla. 2001) *citing Dowdell. Tran v. Nomad Grp.*, 8:20-cv-1945-CEH-SPF (M.D. Fla. May 19, 2023) *citing Lockwood v. CIS Servs., LLC*, No. 3:16-cv-965-J-39PDB, 2019 WL 2226126, at *21-22 (M.D. Fla. May 3, 2019) (listing cases) report and recommendation adopted, 2019 WL 3383628 (M.D. Fla. June 13, 2019). See also *Mosley v. Lozano Ins. Adjusters, Inc.,* No. 3:19-cv-379-J-32JRK, 2021 WL 293243, at 4 (M.D. Fla. Jan. 11, 2021) (finding postage, delivery, travel, and lodging expenses recoverable under § 216(b)). *Zambrana v. Scubavice Diving Ctr., LLC*, No. 2:23-cv-731-SPC-KCD, 2025 U.S. Dist. LEXIS 6213, at *7 (M.D. Fla. Jan. 13, 2025) ("expense for the mediator is not a taxable cost, but is a permitted litigation cost under 29 U.S.C. § 216(b), which seems reasonable.")  Adopted by, Motion granted by, in part *Zambrana v. Scubavice Diving Ctr., LLC*, 2025 U.S. Dist. LEXIS 14415 (M.D. Fla., Jan. 28, 2025). Thus, "where attorney's fees are expressly authorized by statute (as they are in 29 U.S.C. § 216(b)),[] the trial court is not limited to Rule 54(d), but, in addition,

has authority to include litigation expenses as part of a 'reasonable attorney's fee.'" *Gorrell v. Wake Cty.*, No. 5:21-CV-00129-M, 2022 U.S. Dist. LEXIS 141068, at *41 (E.D.N.C. Aug. 8, 2022).

As reflected in the Settlement Agreement, Plaintiffs' counsel seeks an approval of the reimbursement of just $3,765.25 for costs and expenses incurred so far in this litigation, including: the filing fee, process server charges, informative website charges, and half of the mediator's fee. Defendants do not oppose this request and agree that costs and expenses incurred should be reimbursed from the settlement fund as per the FLSA and that doing so is in line with the FLSA's fee award provision and other similar settlements. Feldman Decl., Ex. 2.

## CONCLUSION

In sum, Plaintiffs submit that this FLSA Collective Action Settlement Agreement represents a fair and reasonable resolution of the disputed issues and claims for overtime wages for Named Plaintiff, the Opt-In Plaintiffs, and on behalf of Collective Members who are to be informed of their voluntary right to participate in this settlement, and that its entry will "secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1.

Both Parties were led by experienced wage and hour, class and collective action attorneys who have decades of experience. *See* Declaration of Feldman, Esq., Exhibit 2. This Settlement is similar to many FLSA pre-certification settlements previously approved in this District and in the Eleventh Circuit with a single approval process. Accordingly, the Parties urge this Court to grant this Unopposed Motion to approve

of their Settlement Agreement, including Plaintiffs' Counsel's requested attorneys' fees and costs, and thus authorize notice to Collective Members of their opportunity to participate in the benefits of this Settlement. The Parties agree that this is a fair settlement that is in both of their best interests to resolve this matter, to pay the settled claims, and dismiss this matter.

**WHEREFORE**, Plaintiff Norton and all opt-in Plaintiffs and the Defendants urge this Court to grant this Unopposed Motion to Approve of this Settlement Agreement, approve of Plaintiffs' Counsel's requested attorney's fees and costs, and thus authorize notice to Collective Members of their opportunity to participate in the benefits of this beneficial Settlement. Plaintiffs further request the entry of a judgment for Plaintiffs as per *Lynn's Foods* and an order dismissing this action with prejudice.[5]

## CERTIFICATE OF CONFERRAL LR 3.01(g)

The undersigned, lead counsel for Plaintiffs, advises the Court that the Parties have conferred on this motion and the relief sought, including the approval of the settlement and all terms and conditions, and collaborated with Defendants' attorneys on this motion. Defendants do not oppose this motion and equally seek approval of this settlement.

Respectfully submitted November 5, 2025 by:

*/s/ Mitchell L. Feldman*
Mitchell L. Feldman, Esquire

---

[5] Federal courts have previously approved the sending of one notice that alerts collective members of the settlement of the action at the same time alerting them of their option to become a part of the action. *See e.g., Kevin Vogenberger v. ATC Fitness Cape Coral, LLC, et al.*, 2015 WL 1883537 (M.D. Fla. April 24, 2015); *Grassick v. Avatar Properties, Inc.*, 2008 WL 5099942 (M.D. Fla. Nov. 25, 2008).

Florida Bar No.: 0080349
FELDMAN LEGAL GROUP
12610 Race Track Road, Suite 225
Tampa, FL 33626
Phone: 813-639-9366
Fax: 813-639-9376
Mfeldman@flandgatrialattorneys.com
Lead Attorney for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Parties may also obtain a copy directly from the CM/ECF system.

*/s/Mitchell Feldman, Esq.*
Mitchell L. Feldman, Esquire
Florida Bar No.: 0080349